IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES COURTS
SOUTHERN DISTRICT OF TEXAS
FILED

OCT 17 2001

Michael N. Milby, Clerk

| | | |
|---|---|---|
| UNDERWRITERS INSURANCE | § | |
| COMPANY, | § | **B -01 - 186** |
| Plaintiff | § | |
| | § | |
| VS. | § | C.A. No. H-01-2161 |
| | § | In Admiralty |
| KANDI SUE, INC. AND | § | Rule 9(h) |
| BUSTER HARRIS, | § | |
| Defendant | § | |

## DEFENDANTS' JOINT ANSWER TO PLAINTIFF'S
## COMPLAINT AND COUNTERCLAIM

**To The Honorable Judge of Said Court:**

Defendants **Kandi Sue, Inc.** and **Buster Harris**, subject to and without waiving their motion to transfer venue, for their joint answer to the Complaint of **Underwriters Insurance Company**, Plaintiff, respectfully show unto the Court the following:

## I.
### A.    **Admissions and Denials**

1.    Defendants admit the allegations of paragraphs I, II, III and IV of Plaintiff's Complaint.

2.    Defendants admit the Court has diversity jurisdiction of this controversy to the alternative of admiralty jurisdiction; deny that venue of this civil action properly lies in the Houston Division of the Southern District of Texas; and deny the remaining allegations of Paragraph V of Plaintiff's Complaint. With respect to venue Defendants assert that for the convenience of the parties and witnesses and in the interest of justice venue of this civil action should be placed in the Brownsville Division of this District.

13

3.    Defendants deny that this case is appropriate for declaratory judgment on the basis alleged in Paragraph VI of Plaintiff's complaint, and to the extent that there exists factual issues with respect to the cause of the foundering of Defendants' shrimp trawler F/V *Ensolido* on or about January 9, 2001, such factual determinations should be made by a jury in accordance with Defendants' counterclaim asserted hereafter.

4.    Defendants admit that on or about January 9, 2001 their F/V *Ensolido* foundered by taking on an inordinate amount of water while underway in the Gulf of Mexico off the Texas coast, that the vessel was towed to Aransas Pass, Texas, dewatered and then towed to its homeport of Brownsville, Texas for repairs, and that at the time of their vessel's foundering she was insured by Plaintiff under the hull insurance policy identified, but the remaining allegations of Paragraph VII with respect to the cause of foundering are denied.   More specifically, Defendants would show that during the first wheel watch on the night of January 9, 2001 the master of the F/V *Ensolido* observed a large quantity of water in the freezer hold bilge apparently originating from a leaking shaft stuffing box, but instead of starting the bilge pump to dewater the hold, he delayed pumping for more than an hour.   When the Rigman awakened to pick up the fishing gear, the freezer hold was again inspected, but it was then observed that the water had risen above the floor boards at which point the pumps were engaged.   However, supplies and other loose objects and debris in the freezer hold, including a try net door, went into the bilge clogging the pumps and becoming entangled in the revolving shaft with the result that the try-net door or other objects forcefully impacted against the hull and opened a hole in the bottom of the hull, thereby increasing the entry of water into the vessel's hull.   Assistance was summoned and extra pumps were placed in operation to dewater the vessel.   In the foregoing

circumstances, Defendants maintain that the foundering of the F/V *Ensolido* was caused by negligence of the master and crew, or alternatively, by a latent defect in the hull and machinery, both of which are covered by the Plaintiff's insurance policy in effect at the time of the casualty.

5.      Defendants generally admit the account of the foundering or flooding stated in Paragraph VIII of Plaintiff's complaint and that Plaintiff denied Defendants' claim after a delay of more than six months; the remaining allegation of Paragraph VIII of Plaintiff's complaint are denied and Defendants restate and incorporate by reference the factual allegations relating to the circumstances of the foundering set forth in Paragraph 4 above.

6.      Defendants deny the allegations of Paragraphs IX, X, XI and XII of Plaintiff's complaint.   More specifically, Defendants deny that the F/V *Ensolido* was unseaworthy at the inception of the applicable policy or thereafter at the commencement of the voyage on which the F/V *Ensolido* foundered.

## Affirmative Defenses

7.      For their first affirmative defense, Defendants request the Court to transfer venue of this civil action to the Brownsville Division of the Southern District of Texas for the convenience of the parties and witnesses and in the interest of justice pursuant to 28 USC 1404(a), and incorporate by reference their motion for such relief heretofore filed with the Court.

8.      Plaintiff's complaint fails to state a claim upon which relief can be granted in that at all material times the F/V *Ensolido* was seaworthy at the inception of the insurance policy and at the commencement of the voyage on which the vessel foundered, and in that the applicable time marine hull insurance policy issued by Plaintiff to Defendants covered as part of the Inchmaree Clause negligence of the master or mariners (Line 31) and latent

defects in the hull or machinery of the vessel (Lines 24-26), which singly or together were the proximate cause of the foundering of the F/V *Ensolido* on or about January 9, 2001.

9.  Alternatively, Defendants are third party beneficiaries of a **"breach of warranty"** endorsement issued in favor of First National Bank, Brownsville, Texas, as Mortgagee, which was in effect at the time of the F/V *Ensolido*'s foundering on January 9, 2001.  Under such endorsements (the premium for which was paid by Defendants) in the event there was a breach of the policy warranty as to seaworthiness of the vessel at inception of the policy or thereafter at the commencement of the voyage, or any other breach of warranty, which is denied, First National Bank and Defendants, as third party beneficiaries, are protected and covered for the amount of any loss, including its claim for repairs and expense arising from the foundering of the F/V *Ensolido* up to the principal balance of the underlying mortgage upon the vessel which is in excess of the loss claimed by Defendants.  Accordingly, pursuant to the terms of the aforesaid **"breach of warranty"** endorsement, Defendants are entitled to payment of their claim for towage, costs of repair and other loss sustained by Defendants as a result of the foundering of the F/V *Ensolido*.

WHEREFORE, premises considered, Defendants **Kandi Sue, Inc**. and **Buster Harris** pray that this civil action be transferred to the Brownsville Division of the Southern District of Texas, and that on final trial that Plaintiff **Underwriters Insurance Company** be denied all declaratory judgment relief, that judgment be entered in favor of Defendants against Plaintiff for the amount of their loss arising from the foundering of the F/V *Ensolido*  as aforesaid, together with prejudgment and post judgment interest, attorney fees and costs, and for such other and further relief to which Defendants may be justly entitled.

## II.   COUNTER-CLAIM OF KANDI SUE, INC.

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, **Kandi Sue, Inc.** as counter-plaintiff, bring this counterclaim for breach of contract, damages and other relief against **Underwriters Insurance Company**, counter-defendant, and would respectfully show unto the Court as follows:

### Parties

1.1.   **Underwriters Insurance Company** as a California corporation with its principal place of business in Culver City, California.

1.2.   **Kandi Sue, Inc.** is a corporation duly organized and incorporated in the State of Texas with its principal place of business in Brownsville, Cameron County, Texas, and at all material times it was the documented owner of the 75-foot steel-hulled shrimp trawler F/V *Ensolido.*

### Service

2.   **Underwriters Insurance Company** has heretofore filed its complaint for declaratory judgment action and may be served by certified mail through its attorney of record, Mr. Mark Cohen at The Niels Eperson Building, 808 Travis, Suite 808, Houston, Texas 77002.   Alternatively, said counter-defendant may be served by service on its registered agent in the State of Texas, David Van Tien, at 450 Gears Road, Suite 750, Houston, Texas 77067.

### Jurisdiction

3.   The Court has jurisdiction over this counterclaim under 28 U.S.C §1332(a)(1) because the Counter-Plaintiff and the Counter-Defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest.   Alternatively, the Court has admiralty and maritime jurisdiction over this controversy within the meaning of Rule 9(h), Federal Rules of Civil Procedure, because the counterclaim seeks enforcement of a

marine insurance policy arising out of the foundering of Counter-Plaintiff's vessel in the Gulf of Mexico.

<strong><u>Facts</u></strong>

4.1.   On or about January 9, 2001, Kandi Sue, Inc. was the owner of the 75-foot, steel-hulled shrimp trawler F/V ***Ensolido,*** Official No. 609583, which at all material times prior to January 9, 2001 was tight, staunch, properly manned and in all respects seaworthy.  At the time of the foundering of the F/V ***Ensolido*** on January 9, 2001, there was in full force and effect a time marine hull insurance policy purchased by Kandi Sue, Inc. and issued by Counter-Defendant under Policy No. MHZ006220 01, effective from August 4, 200 to August 4, 2001.  A true and correct copy of the aforesaid policy is attached hereto as **Exhibit A** and incorporated herein for all purposes as if set forth verbatim.

4.2.   In addition, Counter-plaintiff purchased and paid the premium to Counter-Defendant for "**breach of warranty**" coverage in favor of First National Bank, Brownsville, Texas, up to the principal balance of the Bank's mortgage, which was $138,660.00.  A true copy of such Breach of Warranty Endorsement is attached hereto as **Exhibit B** and is incorporated herein by reference.  Such breach of warranty coverage was in effect at the time the F/V ***Ensolido*** foundered on January 9, 2001.

4.3.   The F/V ***Ensolido***, in all respects, was seaworthy at the inception of the above-described hull policy (Exhibit A) and breach of warranty endorsement (Exhibit B) were issued by the Counter-Defendant, and at all times thereafter Cross-Plaintiffs exercised due diligence to maintain its vessel in seaworthy condition.

4.4.   On January 9, 2001, the F/V ***Ensolido*** foundered by taking on an inordinate amount of water while underway in the Gulf of Mexico off the

Texas coast, after which the vessel was towed to Aransas Pass, Texas, dewatered and then towed to its homeport of Brownsville, Texas for repairs. More specifically, Defendants would show that during the first wheel water on the night of January 9, 2001 the master of the F/V *Ensolido* observed a large quantity of water in the freezer hold bilge apparently originating from a leaking shaft stuffing box, but instead of starting the bilge pump to dewater the hold, he delayed pumping for more than an hour. When the Rigman awakened to pick up the fishing gear, the freezer hold was again inspected, and it was then observed that the water had risen above the floor boards, at which point the pumps were engaged. However, supplies and other loose objects and debris including a try-net door went into the bilge clogging the pumps and becoming entangled in the revolving shaft with the result that a try net door or other object forcefully impacted against the hull and opened a hole in the bottom of the hull, thereby increasing the entry of water into the vessel's hull. Assistance was summoned and extra pumps were placed in operation to dewater the vessel. Repairs, towing charges and other expenses resulting from the foundering of the F/V *Ensolido* total in the sum of $75,165.98. Defendants maintain that the cause of the foundering of the vessel was the negligence of the master and crew in failing to pump the vessel regularly and especially after excess water was discovered in the bilge by the master, or alternatively by a latent defect in the hull and machinery of the vessel, which were insured against by Counter-Defendant under the Inchmaree Clause at Line 31 and Lines 24-26 of the hull policy.

4.5.    At the time of the loss, on January 9, 2001 the F/V *Ensolido* was insured for $200,000 with a policy deductible of $5,000. Counter-defendant Underwriters Insurance Company was promptly notified of the foundering of the F/V *Ensolido* and a claim was made under said policy in the sum of

$75,165.98.  Although demand has been made, Counter-Defendant delayed more than six months in paying the loss and finally denied the claim.

4.6     Pursuant to the terms of the insurance policy Counter-Defendant is indebted to Counter-Plaintiffs Kandi Sue, Inc., as the legal owner of the F/V **Ensolido** in the amount of $75,165.98, less deductible of $5,000, as itemized in **Exhibit C** attached hereto, together with prejudgment and post-judgment interest and other damages as may be allowed by law.

## Breach of Contract

5.1.    Counter-plaintiff realleges and incorporates Paragraphs 4.1 through 4.6 above.

5.2.    Counter-defendant Underwriters Insurance Company issued a time marine hull insurance policy (Exhibit A) to Counter-Plaintiff.  Said policy covered the hull of the F/V **Ensolido**.  The vessel suffered a loss during the term of the policy and such loss was covered by a peril insured against under the Inchmaree Clause (Lines 24-26, 31) of the policy (Exhibit A).  Counter-plaintiff has made claim under the policy.  Counter-defendant has had ample and adequate opportunity to investigate the claim and has denied such claim without just cause, thereby breaching its contract with Counter-Plaintiff.

5.3.    Pursuant to the terms of the policy and by reason of Counter-Defendant's failure to make payment of the claim, Counter-Defendant is indebted to Counter-Plaintiff in the sum of Seventy-Five Thousand One Hundred Sixty-Five and 98/100 Dollars ($75,165.98), less deductible of Five Thousand Dollars ($5,000.00), together with prejudgment and post-judgment interest and other damages as may be allowed by law.

## Breach of the Duty of Good Faith and Fair Dealing

6.1.    Counter-Plaintiff realleges and incorporates Paragraphs 4.1 through 4.6 above.

6.2.   There was implied in the written agreements and the relationship which existed between Counter-Plaintiff and Counter-Defendant a covenant and duty of good faith and fair dealing wherein the Counter-Defendant impliedly covenanted and it would, in good faith and in the exercise of fair dealing, deal with Counter-Plaintiff fairly and honestly and do nothing to impair, interfere with, hinder or potentially injure the Counter-Plaintiff.

6.3.   The Counter-Defendant has no reasonable basis for denying or delaying the payment of Counter-Plaintiff's claim.   The Counter-Defendant knew, or should have known, that there was no reasonable basis for denying or delaying payment of Counter-Plaintiff's claim.  In doing so, Counter-Defendant breached its duty of good faith and fair dealing.

6.4.   As a proximate result of Counter-Defendant's breach of its covenant of good faith and fair dealing, Counter-Plaintiff has suffered actual damages in an amount of the face value of the insurance policy (Exhibit A), together with all other actual and consequential damages arising from Counter-Defendant's wrongful refusal to pay the claim.

### Violation of the Texas Deceptive Trade
### Practices/Consumer Protection Act

7.1.   Counter-Plaintiff realleges and incorporates Paragraphs 4.1 through 4.6 above.

7.2.   In the alternative and in conjunction with the foregoing causes of action, Counter-Plaintiff now brings this cause of action against Counter-Defendant **Underwriters Insurance Company** for its false, misleading, and deceptive acts and practices in violation of §§17.46 and 17.50 of the Texas Deceptive Trade Practices Act.   In representing that the insurance policy procured would adequately protect the Counter-Plaintiff against the risk insured against, the Counter-Defendant, by and through its employees, agents,

adjusters and representatives, represented that the insurance policy conferred rights upon Counter-Plaintiff which it did not confer. This misrepresentation was knowingly committed by the Defendant, its employees, agents and representatives.

7.3.   In the alternative and in conjunction with the foregoing causes of action, Counter-Plaintiff now brings this cause of action against Counter-Defendant for its breach of express and implied warranties and its violation of §17.50(a)(2) of the Texas Deceptive Trade Practices Act.   The Counter-Defendant, its employees, agents, adjusters, and representatives, expressly and impliedly warranted that the insurance policy would provide protection to Plaintiff for losses of the types suffered by Counter-Plaintiff, that Counter-Plaintiff would be fully covered under the trip endorsement, and that Counter-Plaintiff's manner of manning the vessel on its trip was acceptable.

7.4.   In the alternative and in conjunction with the foregoing causes of action, Counter-Plaintiff brings this cause of action against the Counter-Defendant pursuant to §17.50(a)(4) of the Texas Deceptive Trade Practices Act.  The Counter-Defendant has engaged in acts and practices determined by law under Texas Insurance Board Rules and Regulations, Board Order 27085, Section 3, to be unfair and deceptive acts and practices in claims settlements (all in violation of Texas Insurance Board Rules and Regulations, Board Order 18663, Section 4(b)) in the following particulars:

A.   Failing to adopt and implement reasonable standards for prompt investigation of claims arising under its policies - Section 3(c);

B.   Not attempting in good faith to effectuate a prompt, fair and equitable settlement of a claim where liability has become reasonably clear - Section 3(d);

C.    Failing to provide Counter-Plaintiff a reasonable explanation of the basis of the denial of Counter-Plaintiff's claim - Section 3(i).

7.5    Said unfair and deceptive acts and practices have damaged Counter-Plaintiff in the amount of at least $70,165.98 as itemized in Exhibit C attached hereto, together with such other actual and consequential damages which Counter-Plaintiff has suffered.

## Penalty

8.1.    Counter-Plaintiff realleges and incorporates Paragraphs 4.1 through 4.6 above.

8.2.    In conjunction with the foregoing causes of action and for the acts and omissions of the Counter-Defendant stated herein, Counter-Plaintiff further sues for the penalty of twelve percent (12%) of the amount of loss suffered by Counter-Plaintiff, together with attorney's fees as provided by Articles 3.62 Texas Insurance Code.

## Breach of Warranty Claim

9.1.    Counter-Plaintiff realleges and incorporates Paragraphs 4.1 through 4.6 above.

9.2.    In the event that the Court or jury finds that the F/V *Ensolido* was unseaworthy at the inception of the hull policy on August 4, 2000, or that Counter-Plaintiff failed thereafter to exercise due diligence to maintain the vessel in seaworthy condition, which Counter-Plaintiff continues to deny, then, in such event Counter-Plaintiff would show unto the Court that it is a third party beneficiary of the Breach of Warranty endorsement to the policy issued in favor of First National Bank, as mortgagee, for any loss sustained to the F/V *Ensolido* up to the mortgage balance of $138,630 (**Exhibit B** attached).

9.3.    To the extent that the interest of First National Bank, as mortgagee has been impaired by the aforesaid loss sustained to the F/V *Ensolido* and/or

by the failure of the owners, master, agent or crew of said vessel, Counter-Plaintiff, as a third party beneficiary of the breach of warranty endorsement (Exhibit B), is entitled to recover from Cross-Defendant such loss in the sum of $75,165.98 less deductible, together with prejudgment and post-judgment interest thereon.

## Attorney's fees

10.1. Counter-Plaintiff realleges and incorporates Paragraphs 4.1 through 4.6 above.

10.2. In conjunction with the foregoing causes of action, the Counter-Plaintiff has been required to retain the services of the undersigned attorney to bring this suit and represent the Counter-Plaintiff in all legal matters concerning this suit, including trial and any subsequent appeals of this action. Counter-Plaintiff is therefore entitled to recover its reasonable attorney's fees.

## Prayer for Relief

WHEREFORE, premises considered, Counter-Plaintiff **Kandi Sue, Inc.** requests that Counter-Defendant **Underwriters Insurance Company,** be summoned to appear and answer herein, and that on final trial, Counter-Plaintiff have and recover:

1.    Judgment against Counter-Defendant for the sum of $70,165.98;

2)    Actual damages in addition to the damages set forth above;

3)    Damages as provided pursuant to the Texas Deceptive Trade Practices Act;

4)    Twelve percent (12%) penalty as provided by law;

5)    Reasonable attorney's fees; and

6) Prejudgment and post-judgment interest at the highest legal rate allowed by law, costs of suit, and

7) Such other and further relief to which Counter-Plaintiff may be justly entitled.

Respectfully submitted,

Jack G. Carinhas, Jr.
S.B. 03795000
Fed ID #1179
302 Kings Highway, Suite 109
Brownsville, Texas 78521
Tel: 956/542-9161
Fax: 956/542-3651
Attorney-in-Charge

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 16th day of October, 2001, a true and correct copy of the foregoing Answer and Counterclaim was mailed to Mr. Mark Cohen, Cohen, Gorman & Putman, L.L.P., The Niels Eperson Building, 808 Travis Street, Suite 808, Houston, Texas 77002-5710, by Certified Mail, Return Receipt Requested.

Jack G. Carinhas, Jr.

# UNDERWRITERS INSURANCE COMPANY
### 200 CORPORATE POINTE, CULVER CITY, CA 90230

**DECLARATIONS**

POLICY NUMBER   MHZ 00 6220 D1

RENEWAL OF:   NEW

**ITEM 1.   Named Insured and Mailing Address:**

BUSTER HARRIS/KANDI SUE, INC.
HC 70 BOX 18
BROWNSVILLE, TX 78521

**Producer's Name and Mailing Address:**

AON RISK SERVICES OF TEXAS, INC.
2000 BERING DRIVE, SUITE 900
HOUSTON, TEXAS 77057

**ITEM 1a.   Loss, if any, payable to:**

ASSURED AND FIRST NATIONAL BANK
BROWNSVILLE, TX, A.T.I.M.A.

**DISCLOSURE OF GUARANTY NONPARTICIPATION**

In the event the insurer is unable to fulfill its contractual obligation under this policy or contract or application or certificate or evidence of coverage, the policy holder or certificate holder is not protected by an insurance guaranty fund or other solvency protection arrangement.

**ITEM 2.   Policy Period:**

From:   August 4, 2000          To:   August 4, 2001

12:00 Noon, Standard Time at the address of the Named Insured as stated herein

---

| **ITEM 3.** (A) Description of Property covered: | (B) State(s), territories where operations are conducted: <br> (C) Navigational limits where applicable: |
| --- | --- |
| 1979 Steel Trawler "ENSOLIDO" | (C) U.S. Gulf of Mexico as per the Fishing Vessel Clauses Special-Terms and Conditions attached herein. |

---

**ITEM 4.** The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGE OR CONDITIONS | AMOUNT OF INSURANCE LIMIT OF LIABILITY | RATES/PREMIUMS/DEDUCTIBLES |
| --- | --- | --- |
| Hull and Machinery | Per Schedule | Per Schedule |
| Protection & Indemnity | Per Schedule | Per Schedule |
| Breach of Warranty | Per Schedule | Per Schedule |
| | | **TOTAL PREMIUM:  $ 15,347.00** |

---

**ITEM 5.   Subject to all of the terms, conditions and exclusions of the forms attached hereto:**

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| MHZ522.1 | Taylor Form SP39-C | MHZ522.3 | F/V Clauses (T&C) | MHZ523.5 | Liability Excl. Clause B |
| MHZ522.S1 | Hull/P&I Sched. of Vessels | MHZ523.1 | A.I.M.U (P&I) Clauses | MZZ529.C | Electronic Date End't C |
| MHZ522.9 | S.R.& C.C. End't 87B-46 | MHZ523.4 | Pollution Exclusion | | |
| MHZ522. | BOW Sched. of Vessels | MHZ522.10 | A.I. Radioactive Clause | | |

---

This Policy is made and accepted subject to the following provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with any other provisions, stipulations and agreements as may be added hereto, as provided in this Policy.

Date: _____          Countersigned by _____

Authorized Representative

MHZ000.a (Rev.(02/10/2000)

# ORIGINAL



**"A"**

## *IMPORTANT NOTICE*

To obtain information or make a complaint:

You may contact your agent at (713) 430-6000

You may call (company)'s toll-free telephone number for information or to make a complaint

1-800-890-9992

You may also write to (company) at:

Underwriters Insurance Company
200 Corporate Pointe
Culver City, CA 90230

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P. O. Box 149104
Austin, TX 78714-0104
Fax # (512) 475-1771

## *PREMIUM OR CLAIMS DISPUTES:*

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## *ATTACH THIS NOTICE TO YOUR POLICY:*

This notice is for information only and does not become a part or condition of the attached document.



Attaching to and forming a part of Policy No. MHZ006220D1    of the    UNDERWRITERS INSURANCE COMPANY

*Additional Loss Payee(s):*

It is understood and agreed that the following Financing Agency/Company is added as a Loss Payee hereunder but only in respect to premiums fully earned as the result of a Total or Constructive Total Loss.

Cananwill, Inc.
1000 Milwaukee Avenue
Glenview, IL 60025

*The foregoing provisions shall under no circumstances be deemed or construed to limit, diminish, or qualify coverages otherwise afforded under the policy.*

JUL-27-2000  14:31      AON RISK SERVICES                   7134306512    P.03/04

## UNDERWRITERS INSURANCE COMPANY
### (COMMERCIAL FISHING VESSEL APPLICATION)

### (PLEASE PRINT OR TYPE ANSWERS)

## I. GENERAL INFORMATION:

| | |
|---|---|
| FULL NAME & ADDRESS OF OWNER(S): | Buster HARRIS HC 20 Box1K BrownSville TX. 78521 |
| VESSEL OPERATOR: | NAME: Abel Bravo    EXPERIENCE: 28 years    AGE: 48 |
| AREA OF NAVIGATION: | Gulf of mexico |

## II. VESSEL SPECIFICATIONS:

| | |
|---|---|
| VESSEL(S) NAME: Ensolido | REGISTRATION NO: 609583 |
| HOMEPORT: Brownsville | TYPE OF FISHING VESSEL/OPERATION: Shrimping |
| YEAR BUILT: 1979 | BUILT BY: Texas True Trawlers |
| WHERE CONSTRUCTED ORIGINALLY BUILT: Brownsville TX. | IF REBUILT: (When and Where): |
| DIMENSIONS: (Length/Breadth/Depth): 82.7  B 90' D. 11.8 | CONSTRUCTION: (Wood/Steel/Fiberglass): Steel |
| GRT: 132  NET: 90 | VESSEL PURCHASED: (New or Used) Used | DATE PURCHASED: Aug. 1995 |
| VALUE NEW: | CURRENT MARKET VALUE: 210.000 | REPLACEMENT COST VALUE: 450.000 |
| DATE OF LAST SURVEY: April 15 2000 | IS ROUTINE MAINTENANCE PERFORMED? yes | |

## III. INSURANCE REQUIREMENTS:
### (A) Hull & Machinery:

| | |
|---|---|
| CURRENT HULL EXPIRATION DATE: | CURRENT AND/OR LAST HULL INSURER: |
| INSURED VALUE REQUESTED: | CURRENT INSURED VALUE: |
| LOSS PAYEES IF ANY: | |

### (B) Protection & Indemnity.

| | |
|---|---|
| CURRENT P&I EXPIRATION DATE: | CURRENT AND/OR LAST P&I INSURER: |
| LIMIT REQUESTED AND/OR REQUIRED: | IS CREW COVERAGE REQUIRED? |
| NUMBER OF CREW (Excluding Captain): | TOTAL NUMBER OF CREW TO BE INSURED: |

# UNDERWRITERS INSURANCE COMPANY
## (COMMERCIAL FISHING VESSEL APPLICATION)

*"Enrolido"*

### III. INSURANCE REQUIREMENTS: (Continued)

(C) Other Insurance Requirements: (1) Breach of Warranty   (2) Excess Collision Liability   (3) War Risk

| IS BREACH OF WARRANTY INSURANCE REQUIRED? | LIMIT/AMOUNT REQUIRED: 138,630.00 | |
|---|---|---|
| FULL NAME & ADDRESS OF MORTGAGEE(S): FIRST NATIONAL BANK  701 E LEVEE  Brownsville TX 785 | | 956-786-7000  FAX 956-986-7045 |
| IS EXCESS COLLISION LIABILITY REQUIRED? | (XS of Insured Hull Value) | IS HULL WAR & P&I WAR RISK REQUIRED? |

### IV. LOSS INFORMATION:

| NAME AND DESCRIBE ANY OTHER VESSELS CURRENTLY OWNED OR OPERATED IN THE PAST FIVE (5) YEARS (IF NONE, PLEASE STATE NONE): |
|---|
| 11 WOOD HULLS |

GIVE FULL DETAILS OF EACH HULL & MACHINERY OR P&I LOSS, PAID, RESERVED AND OUTSTANDING, INSURED OR UNINSURED, SUSTAINED BY THIS OWNER ON THIS OR ANY OTHER VESSEL FOR THE PAST FIVE (5) YEARS, IF NONE, PLEASE STATE NONE, IF ADDITIONAL SPACE IS NEEDED, PLEASE STATE SEE ATTACHMENT.

| DATE OF LOSS: | DESCRIPTION OF LOSS: | AMOUNT PAID OR RESERVED: |
|---|---|---|
| | NONE | |

I understand that the information provided in this application and documents attached is the basis for the company's providing such insurance. The entire policy shall be void and coverage will be forfeited if I have concealed or misrepresented any material fact of circumstance in this application.

(By signing this application form the Applicant is not obliged to purchase the insurance nor is the Insurer obliged to accept the insurance risk).

SUBMITTING PRODUCER: *Aon Risk Services of Texas*

SIGNATURE OF APPLICANT: *Buster Harris*

PRINTED NAME: BUSTER HARRIS

DATE: 7-28-2000

**TAYLOR**
**1953**
**(Rev. 70)**

*SP-39C*

1    In consideration of the premium and the stipulations, terms and conditions hereinafter mentioned, this Company does
2    hereby insure:          *(AS ATTACHED)*
3    Assured:               *(AS ATTACHED)*
4
5
6    Whose address is       *(AS ATTACHED)*

7    Loss, if any, payable to:    *(AS ATTACHED)*
8
9
10   Upon the             *(AS ATTACHED)*       called     *(AS ATTACHED)*
11   Her hull, tackle, apparel, engines, boilers, machinery, appurtenances, equipment, stores, boats and furniture
12   From               *(AS ATTACHED)*             Beginning and ending at noon
13   Until                *(AS ATTACHED)*             Standard Time at place of issuance.

14

| AMOUNT INSURED HEREUNDER | RATE | PREMIUM | AGREED VALUATION |
|---|---|---|---|
| *(Per Schedule)* | *(Per Schedule)* | *(Per Schedule)* | *(Per Schedule)* |

15      Touching the adventures and perils which this Company is contented to bear and take upon itself, they are
16 of the waters named herein, fire, lightning, earthquake, assailing thieves, jettisons, barratry of the master and
17 mariners and all other like perils that shall come to the hurt, detriment or damage of the vessel named herein.
18      This insurance also covers loss of or damage to the vessel named herein caused by explosion on shipboard or
19 elsewhere.
20      This insurance also covers loss of or damage to the vessel named herein directly caused by:
21         Accidents in loading, discharging or handling cargo, or in bunkering;
22         Accidents in going on or off, or while on drydocks, graving docks, ways, marine railways, gridirons or
23         pontoons;
24         Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting
25         of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and
26         expense of replacing or repairing the defective part);
27         Breakdown of or accidents to nuclear installations or reactors not on board the vessel named herein;
28         Contact with aircraft, rockets or similar missiles, or with any land conveyance;
29         Negligence of charterers and/or repairers, provided such charterers and/or repairers are not assured(s)
30         hereunder;
31         Negligence of master, mariners, engineers or pilots;
32 provided such loss or damage has not resulted from want of due diligence by the assured, the owners or managers
33 of the vessel, or any of them.
34      General average, salvage and special charges payable as provided in the contract of affreightment, or fail-
35 ing such provision, or there be no contract of affreightment, payable in accordance with the laws and usages
36 of the port of New York. Provided always that when an adjustment according to the laws and usages of the
37 port of destination is properly demanded by the owners of the cargo, general average shall be paid in accord-
38 ance with same.
39      And it is further agreed that if the vessel named herein ~~and/or her tow, if any,~~ shall come into collision with any
40 other ship or vessel ~~other than her tow, if any,~~ and the assured in consequence of the vessel named herein being at
41 fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in
42 respect of such collision, this Company will pay its proportion of such sum or sums so paid as the amount insured
43 hereunder bears to the agreed valuation of the vessel named herein, provided always that this Company's liability in
44 respect of any one such collision shall not exceed the amount insured hereunder. And in cases where the liability of
45 the vessel named herein has been contested or proceedings have been taken to limit liability, with the consent in writ-
46 ing of this Company this Company will also pay a like proportion of the costs which the assured shall thereby incur,
47 or be compelled to pay; but when both vessels are to blame, then, unless the liability of the owners of one or both such
48 vessels becomes limited by law, claims under this Collision Liability Clause shall be settled on the principle of cross-
49 liabilities as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels such
50 one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance
51 or sum payable by or to the assured in consequence of such collision. (Provided always that this clause shall in no
52 case extend to any sum which the assured may directly, indirectly, or otherwise incur or become liable to pay or
53 shall pay for: removal, destruction or abatement of, or any attempt or failure or neglect to remove, destroy or abate
54 obstructions or wrecks and/or their cargoes or any hazard resulting therefrom; loss of, or damage to, or expense,
55 including demurrage and/or loss of use thereof, in connection with any fixed or movable object, property or thing
56 of whatever nature (excepting other vessels and property thereon); loss of or damage to her tow; cargo, baggage
57 or engagements of the vessel named herein or of her tow; or for loss of life of, or injury to, or illness of.
58 any person.) And provided also that in the event of any claim under this clause being made by anyone other than the own-
59 ers of the vessel named herein, he shall not be entitled to recover in respect of any liability to which the owners of the
60 vessel as such would not be subject, nor to a greater extent than the owners would be entitled in such event to recover.
61      In case of any loss or misfortune it shall be lawful and necessary for the assured, their factors, servants and
62 assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the vessel named herein,
63 or any part thereof, without prejudice to this insurance, to the charges whereof this Company will contribute as here-
64 inafter provided. It is agreed that the acts of the assured or this Company, or their agents, in recovering,
65 saving and preserving the property insured in case of disaster shall not be considered a waiver or an acceptance
66 of an abandonment, nor as affirming or denying any liability under this policy; but such acts shall be con-
67 sidered as done for the benefit of all concerned, and without prejudice to the rights of either party.

68       Warranted that in case of a. casualty or loss which may result in a c . under this policy the assured shall
69 give this Company prompt notice thereof and reasonable opportunity to be represented on a survey of the damage,
70 each party to name a surveyor, which two surveyors shall proceed to draw specifications as to the extent of the
71 damage and the work required to make the damage good. If the two surveyors agree, such specifications shall be
72 binding on both this Company and the assured, subject nevertheless to policy terms and conditions and the question
73 of whether or not the disaster and resulting loss or damage are covered by this policy. In the event the two survey-
74 ors cannot agree, they must select an umpire, and in the event they cannot agree upon an umpire, either party
75 hereto may apply to the United States District Court for the district in which the home port of the vessel named
76 herein is located for the appointment of an umpire, pursuant to the United States Arbitration Act. The decision of
77 the umpire so appointed shall have the same force and effect as the specifications aforesaid. When specifications
78 have been drawn in either of the modes aforesaid, if the Company shall be dissatisfied with the terms which the
79 assured may obtain for the repair of the damage as specified by said survey, then this Company may require the
80 surveyors or the umpire to submit the specifications prepared as aforesaid to such shipyard, repair men, boat build-
81 ers and shipwrights, as may be selected by such surveyors or the umpire, with a request for bids for such repairs.
82 If after reception of such bids, the assured shall elect to accept some other bid than that of the lowest bidder, this
83 Company shall be liable only for its proportion of so much of the sum actually expended to effect repairs
84 specified by the surveyors for its account as does not exceed said lowest bid. In no event however shall this
85 Company respond for an amount in excess of its proportion of the amount actually expended by the assured in
86 effecting such repairs.
87       With respect to physical loss or damage to the vessel named herein this Company shall be liable only for
88 such proportion of such loss or damage as the amount insured hereunder bears to the agreed valuation.
89       In the event of expenditure under the sue and labor clause, this Company will pay the proportion of such
90 expenses that the amount insured hereunder bears to the agreed valuation of the vessel named herein, or that the
91 amount insured hereunder, less loss and/or damage payable under this policy, bears to the actual value of the
92 salved vessel, whichever proportion shall be less.
93       When the contributory value of the vessel named herein is greater than the agreed valuation stated herein
94 the liability of this Company for general average contribution (except in respect of amount made good to the
95 vessel) or salvage shall not exceed that proportion of the total contribution due from the *vessel that* the amount
96 insured hereunder bears to the contributory value; and if because of damage for which this Company is liable as
97 particular average the value of the vessel has been reduced for the purpose of contribution, the amount of the
98 particular average claim under this policy shall be deducted from the amount insured hereunder and this Com-
99 pany shall be liable only for the proportion which such net amount bears to the contributory value.
100       The sum of $ (PER ATTACHED) shall be deducted from the total amount of any or all claims (including claims
101 for sue and labor, collision liability, general average and salvage charges) resulting from any one accident. This
102 deduction does not apply to claims for total or constructive total loss. For the purpose of this clause each accident
103 shall be treated separately, but it is agreed that a sequence of damages arising from the same accident shall be
104 treated as due to that accident.
105       In case of loss, such loss to be paid in thirty days after satisfactory proof of loss and interest shall have
106 been made and presented to this Company, (the amount of any indebtedness due this Company from the assured
107 or any other party interested in this policy being first deducted).
108       Upon making payment under this policy the Company shall be vested with all of the assured's rights of re-
109 covery against any person, corporation, vessel or interest and the assured shall execute and deliver instruments
110 and papers and do whatever else is necessary to secure such rights.
111       Any agreement, contract or act, past or future, expressed or implied, by the assured whereby any right of re-
112 covery of the assured against any vessel, person or corporation is released, decreased, transferred or lost which
113 would, on payment of claim by this Company, belong to this Company but for such agreement, contract or act shall
114 render this policy null and void as to the amount of any such claim, but only to the extent and to the amount that
115 said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of this
116 Company, but the Company's right to retain or recover the full premium shall not be affected.
117       This Company shall have the option of naming the attorneys who shall represent the assured in the prosecution
118 or defense of any litigation or negotiations between the assured and third parties concerning any claim, loss or inter-
119 est covered by this policy, and this Company shall have the direction of such litigation or negotiations. If the assured
120 shall fail or refuse to settle any claims authorized by the Company, the liability of the Company to the assured
121 shall be limited to the amount for which settlement could have been made.
122       It is a condition of this policy that no suit, action or proceeding for the recovery of any claim for physical
123 loss of or damage to the vessel named herein shall be maintainable in any court of law or equity unless the same
124 be commenced within twelve (12) months next after the calendar date of the happening of the physical loss or
125 damage out of which the said claim arose. Provided, however, that if by the laws of the state within which this
126 policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding
127 be commenced within the shortest limit of time permitted, by the laws of such state, to be fixed herein.
128       In event of damage, cost of repairs to be paid without deduction of one-third, new for old.
129       If claim for total loss is admitted under this policy and sue and labor expenses have been reasonably incurred in
130 excess of any proceeds realized or value recovered, the amount payable under this policy will be the proportion of
131 such excess that the amount insured hereunder (without deduction for loss or damage) bears to the agreed valuation
132 or the sound value of the vessel named herein at the time of the accident, whichever value was greater.
133       It is a condition of this insurance that this Company shall not be liable for unrepaired damage in addition
134 to a total or constructive total loss.
135       No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and re-
136 pairing the vessel named herein shall exceed the agreed valuation.
137       In ascertaining whether the vessel named herein is a constructive total loss the agreed valuation shall be
138 taken as the repaired value, and nothing in respect of the damaged or break-up value of the vessel or wreck shall
139 be taken into account.
140       In the event of total or constructive total loss, no claim to be made by this Company for freight, whether
141 notice of abandonment has been given or not.
142       Any deviation beyond the navigation limits provided herein shall void this policy; but on the return of the
143 vessel in a seaworthy condition, within the limits herein provided, this policy shall reattach and continue in full
144 force and effect, but in no case beyond the termination of this policy.
145       Warranted by the assured that there shall be no other insurance covering physical loss or damage to the
146 vessel named herein other than that which is provided in lines 15 through 33 hereof but permission is granted
147 to carry other insurance of whatever kind or nature not covered by this policy or additional amounts of insurance
148 of the kind or nature covered by this policy other than as provided in lines 15 through 33.
149       This insurance shall be void in case this policy or the vessel named herein, shall be sold, assigned, transferred
150 or pledged, or if there be any change of management or charter of the vessel, without the previous consent in
151 writing of this Company.

MHZ522 1 (Rev.(9/20/99)

152     Notwithstanding anything to ə contrary contained in this policy, ι insurance is warranted free from
153 any claim for loss, damage or expense caused by or resulting from capture, seizure, arrest, restraint or detainment,
154 or the consequences thereof or of any attempt thereat, or any taking of the vessel, by requisition or otherwise,
155 whether in time of peace or war and whether lawful or otherwise; also from all consequences of hostilities or war-
156 like operations (whether there be a declaration of war or not), but the foregoing shall not exclude collision or
157 contact with aircraft, rockets or similar missiles, or with any fixed or floating object (other than a mine or
158 torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of
159 the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein,
160 is performing) by a hostile act by or against a belligerent power, and for the purpose of this warranty "power"
161 includes any authority maintaining naval, military or air forces in association with a power; also warranted free,
162 whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic
163 or nuclear fission and/or fusion or other reaction or radioactive force or matter.
164     Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife
165 arising therefrom, or piracy.
166     If war risks are hereafter insured by endorsement on the policy, such endorsement shall superseded the above
167 warranty only to the extent that their terms are inconsistent and only while such war risk endorsement remains
168 in force.
169     Warranted free of loss or damage in consequence of strikes, lockouts, political or labor disturbances, civil
170 commotions, riots, martial law, military or usurped power or malicious acts.
171 ~~Either party may cancel this policy by giving ten day's notice in writing; if at the option of this Company~~
172 ~~pro rata rates, if at the request of the Assured short rates, will be charged and arrival.~~

---

173                **NAVIGATION LIMITS--SPECIAL CONDITIONS-- ENDORSEMENTS, ETC**

174     Attached to and made part of Policy No. <u>MHZ 006220D1</u> of the   <u>**UNDERWRITERS INSURANCE COMPANY**</u>

MHZ522.1 (Rev.(9/20/99)

To be attached to and forming a part of Policy No. ___MHZ006220D1___

of the ___UNDERWRITERS INSURANCE COMPANY___

## Hull & Machinery/Protection & Indemnity

| Vessel No. | Vessel Name | Agreed Value/ Sum Insured | Hull Rate | Hull Deductible | Hull Premium | P&I Limit | P&I Deductible | P&I Premium | Total Premiums |
|---|---|---|---|---|---|---|---|---|---|
| 1 | "ENSOLIDO" | $ 200,000.00 | 3.50% | $ 5,000.00 | $ 7,000.00 | $ 200,000.00 | $ 5,000.00 | $ 8,000.00 | $ 15,000.00 |
| | Totals** | $ 200,000.00 | | | $ 7,000.00 | | | $ 8,000.00 | $ 15,000.00 |

Each vessel deemed separately insured.

MHZ523 51 (Rev (10/26/99)

To be attached to and forming a part of Policy No. __MHZ006220D1__
of the __UNDERWRITERS INSURANCE COMPANY__

## BREACH OF WARRANTY

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS NOTED AND AGREED THAT THIS INSURANCE, AS TO THE INTEREST OF THE MORTGAGEES LISTED BELOW ONLY, SHALL NOT BE IMPAIRED OR INVALIDATED BY ANY ACT OR NEGLECT OF THE MORTGAGOR, OWNER, MASTER, AGENT OR CREW OF SAID VESSEL NOR BY FAILURE TO COMPLY WITH ANY WARRANTY OR CONDITION OVER WHICH THE MORTGAGEES HAVE NO CONTROL, PROVIDED HOWEVER, THE MAXIMUM LIMIT OF LIABILITY OF THIS EXTENSION SHALL NOT EXCEED THE MORTGAGE BALANCE AT THE TIME OF THE LOSS.

| VESSEL NO. | VESSEL NAME | BREACH OF WARRANTY AMOUNT | ANNUAL RATE | ANNUAL PREMIUM | NAME OF MORTGAGEE |
|---|---|---|---|---|---|
| 1 | "ENSOLIDO" | $ 138,630.00 | 0.25% | $ 347.00 | First National Bank 701 E. Levee Brownsville, Texas 78521 |
| | | | | | |
| | | | | | |
| | Totals** | $ 138,630.00 | | $ 347.00 | |

*American Institute*
S.R. & C.C. Endorsement (Hulls)
September 8, 1959

87 B-46
(Revised)

In consideration of an additional premium, as provided below, this insurance is extended to cover additional risks, from and after   (INCEPTION)

in accordance with the following clause:-

"This insurance also covers damage to or destruction of the property insured directly caused by strikers, locked out workmen, or persons taking part in labor disturbances or riots or civil commotions or caused by vandalism, sabotage, or malicious mischief, but excluding civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, and warranted free from any claim for delay, detention or loss of use, and free from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter.

Notwithstanding the exclusions in the F. C. & S. Clause in the within policy 'vandalism,' 'sabotage,' and 'malicious mischief,' as used herein, shall be construed to include wilful or malicious physical injury to or destruction or the described property caused by acts committed by an agent of any Government, party or faction engaged in war, hostilities, or other warlike operations, provided such agent is acting secretly and not in connection with any operations of military or naval armed forces in the country where the described property is situated."

Until further notice the Assured shall pay, for the additional protection afforded by the above clause, an additional premium of   INCLUDED   percent. The Underwriters have the right nevertheless to change this rate at any time on 15 days written notice to the Assured; but the Assured shall have the option to cancel this endorsement as of the time when such change of rate would take effect, provided previous notice of such cancellation be given to the Underwriters.  The rate may be changed as above notwithstanding strikes, labor troubles or civil commotions, on board the vessel or elsewhere, may be threatened or actually exist either at the time when such notice is given or when it takes effect.

# FISHING VESS__ CLAUSES-SPECIAL TERMS A__ CONDITIONS

## DEFINITION OF "COMPANY" AND "UNDERWRITER"

The terms "Company" and "Underwriter" may be used interchangeably within this policy. The policy includes, but is not limited to, the Application, Statement of Compliance of Recommendations, and the following clauses. "Company" and "Underwriter" mean, when used herein, UNDERWRITERS INSURANCE COMPANY.

## SERVICE

Assured warrants that the vessel(s) _____ *(PER SCHEDULE)* _____ insured herein shall be used only for commercial fishing purposes. It is further warranted by the Assured that the vessel(s) insured herein shall not be used for private pleasure purposes, and the vessel(s) insured herein shall not be hired or chartered for any purposes without prior written consent of the Company. This insurance does not cover losses, liabilities, claims, damages, costs or expenses which accrue when the vessel(s) is used for private pleasure purposes without prior written consent of the Company or when the vessel(s) has been hired or chartered without prior written consent of the Company.

## NAVIGATIONAL LIMITS (TRADING WATERS)

Assured warrants that the operation of the vessel(s) shall be confined to the Gulf of Mexico and those navigable waters immediately adjacent thereto not south of 20° north latitude (but including the Gulf of Campeche) nor east of 80° west longitude (but excluding Cuban waters). This insurance does not cover any loss, liability, damage, claim, costs, or expenses which accrue, occur, or arise when the vessel(s) is operated outside the navigational limits defined within the Assured's warranty unless prior written consent of the Company is given.

## PROHIBITED WATERS

This insurance shall not cover loss, damage or expense in consequence of seizure or detention for or on account of any illicit or prohibited trade nor for entering nor for the consequence of entering any prohibited fishing waters nor for violations of any port regulation nor for any claims for wages or provisions furnished to officers or crew whilst the property insured hereunder may be detained as the result of any violation, seizure, detention, loss or disaster or during any subsequent salvage and/or repairs. Notwithstanding the foregoing, loss of life, personal injury and sickness shall not be considered a consequence of entering prohibited fishing waters unless occurring in evading or attempting to evade or escaping from or attempting to escape from arrest, seizure or detention.

## WARRANTY OF SEAWORTHINESS

Assured warrants that at the inception of this policy the vessel(s) insured hereunder shall be in a seaworthy condition and, thereafter, during the currency of this policy, the Assured warrants that he will exercise due diligence to keep the vessel(s) seaworthy, and in all respects fit, tight and properly manned, equipped and supplied. The Assured further warrants that the Assured and/or the Assured's Master will not knowingly permit the vessel(s) insured hereunder to proceed to sea in an unseaworthy condition. Any violation of this warranty of seaworthiness shall void coverage under this policy from the time of such violation, notwithstanding anything contained to the contrary herein.

## SURVEY CLAUSE

The Company has the right to appoint a surveyor of its choice to inspect the insured vessel(s) at any time. The Assured shall cooperate with the Company in making the insured vessel(s) available for survey. All recommendations involving the seaworthiness or safety of the insured vessel(s) made by a surveyor acting on behalf of the Company must be completed as soon as practicable but, in any event, prior to any further commercial fishing operations.

## VESSEL STABILITY

It is warranted by the Assured that any additions, installations, and/or structural changes to any vessel(s) insured which would affect the stability of the vessel(s) will be reported to the Company before the vessel(s) proceeds to sea. It is further warranted by the Assured that the insured Vessel(s) will not proceed to sea until the stability of the insured vessel(s) has been examined and approved by a qualified marine surveyor. Any violations of this warranty shall void coverage under this policy from the time of such violation, notwithstanding anything contained to the contrary herein.

## APPLICATION CLAUSE

It is hereby agreed that the application is attached to and made a part of this policy. The Assured warrants that all of the information on the application is true, correct, and complete to the best of the Assured's knowledge. The Assured agrees that his statements in the application are warranties and statements of material facts of the Assured, and that this policy is issued by the Company in reliance upon the truth of such warranties and statements of material facts; the Assured agrees that this policy embodies

## APPLICATION CLAUSE (Continued)

all agreements existing between the Assured and the Company relating to this insurance and any oral agreement or writing relating to the insurance shall not bind the Company and the Assured unless incorporated into the insurance policy. The Assured agrees and understands that if the Assured has concealed or misrepresented any material fact or circumstance, or conceals or misrepresents any material fact or circumstance during the applicable term of this insurance, coverage under this policy will be forfeited, whether before or after a loss, which otherwise was provided.

## MISREPRESENTATION

If the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject matter thereof, or in case of any fraud, attempted fraud, or false swearing by the Assured, touching any matter related to this insurance or to the subject thereof, whether before or after a loss, coverage under this policy will be forfeited which otherwise was granted.

## CARGO EXCLUSION

No claim shall in any case be allowed against this policy for loss, liability, damage, cost, or expense incurred by the Assured, or any other person or entity that may make claim under this policy, in respect to catch and cargo. This insurance is warranted free of any liability imposed on the Assured arising out of the sale and/or consumption of any catch of any insured vessel(s).

## NET CLAUSE

No claim shall in any case be allowed against this policy for loss of, damage to, or expense in connection with fishing or trawling gear during or as a result of fishing operations. "Fishing gear" and "trawling gear" are defined for the purpose of this clause to include, but such definition is not limited to, lines, nets, trawls, rigging, tackle, booms, doors, and attached appurtenances.

## ANCHORS OR CABLES

Notwithstanding anything contained herein to the contrary, this policy does not insure against physical loss of or damage to anchors or anchor cables unless the insured vessel(s) is deemed a total loss hereunder.

## DELIBERATE DAMAGE (POLLUTION HAZARD) CLAUSE

In consideration of the premium paid, and subject to the terms and conditions of this policy, this insurance also covers physical loss of or damage to the vessel(s) directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof resulting directly from damage to the vessel(s) for which the Company is liable under this policy provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the owners or managers of the vessel(s) or any of them to prevent or mitigate such threat. Masters, officers, crew or pilots are not to be considered owners within the meaning of this clause even if they hold shares in the vessel(s).

## HIGH WATER BILGE ALARM SYSTEM WARRANTY

Assured warrants that a high water bilge alarm system is properly installed in the engine room of the insured vessel(s), is fully audible in the pilot house, and is maintained in a fully operative condition. Failure of the Assured to comply with this warranty, whether before or after a loss, will result in forfeiture of coverage under this policy, which otherwise was provided.

## EPIRB WARRANTY

The Assured warrants that the vessel(s) has on board an operating FCC type accepted category 1, float-free, automatically activated, 406 MHz Emergency Position Indicating Radio Beacon (EPIRB) as required by Federal Regulation 46 C.F.R. Part 25.26. Alternatively, the vessel(s) may use a 121.5/243 MHz Class A EPIRB until August 17, 1994, if Federal Regulation 46 C.F.R. Part 25.26 permits use of such equipment by the insured vessel(s). After August 17, 1994, 121.5/243 MHz Class A EPIRB cannot be used on an insured vessel(s) and the insured vessel(s) must have installed aboard a fully operating FCC type accepted category 1, float-free, automatically activated, 406 MHz Emergency Position Indicating Radio Beacon (EPIRB) as required by Federal Regulation 46 C.F.R. Part 25.26. Failure of the Assured to comply with this warranty, whether before or after a loss, will result in forfeiture of coverage under this policy, which otherwise was granted.

## CAPTAIN AND CREW

The Assured warrants that the insured vessel(s) will not put to sea with a total number of persons on board, including the Captain, in excess of Per Application. The Assured warrants that the vessel(s) will not put to sea with a total number of persons on board, including the Captain, of two or less. Should the vessel(s) put to sea with a total number of persons on board in breach of either of the two warranties set out above within this clause, coverage under this policy will be forfeited, which otherwise was granted.

If an owner or part owner of the insured vessel(s) is a Captain or a member of the crew of the insured vessel(s), or an owner or part owner of the vessel(s) is acting as Captain or member of the crew of an insured vessel(s), coverage under the Protection & Indemnity Section of this policy is limited to maintenance and cure for the owner and/or part owner. This provision applies whether the vessel(s) is owned by a corporation, partnership, individual, or individuals.

## MINOR EXCLUSION

It is understood and agreed there shall be no recovery under this policy for any and all loss, liability, damage, costs, or expenses incurred with respect to persons of seventeen (17) years of age or less ("Minors") employed or otherwise on board the insured vessel(s). The Assured may be covered under this policy for any loss, liability, damage, costs or expenses incurred in respect to a "Minor," if the "Minor" is employed as a member of the crew of the insured vessel(s), for an additional premium of $2,500.00. If the Assured pays the additional premium of $2,500.00 to cover a "Minor" employed as a member of the crew of the insured vessel(s), the limit of liability hereunder shall not exceed $25,000.00 with respect to any one "Minor" nor a total of $25,000.00 if more than one "Minor" is employed on the insured vessel(s).

## PUNITIVE DAMAGES EXCLUSION

There shall in no circumstances be any recovery from the Company under this policy for liability imposed upon the Assured as punitive, exemplary, or treble damages, however described. In addition, there shall in no circumstances be any recovery from the Company for legal fees and expenses incurred in defending a claim for punitive, exemplary, or treble damages.

## P & I DEDUCTIBLE

It is hereby understood and agreed that if the Protection & Indemnity coverage provided under this policy is written subject to a deductible, and the claimed amount of the loss, liability, damage, costs or expenses is in excess of the amount of the deductible, the attorneys and/or claims adjusters appointed by the Company will also act on behalf of the Assured with respect to the amount of the deductible. The Assured further undertakes to furnish immediately upon demand by such attorneys and/or claims adjusters any amount, up to the amount of the deductible, required to negotiate or settle any claim and/or to pay any legal or investigation charges incurred in connection with the loss, liability, damage, costs, or expenses.

## CANCELLATION

This policy may be cancelled at any time at the request of the Assured, in which event the Company shall be entitled to an earned premium at the customary short-rate basis.

This policy may be cancelled at any time by the Company by giving notice to the Agent. Notice to the Agent shall constitute a complete notice of cancellation and this policy shall be null and void at 12:00 noon, Standard Time, at the place of issuance, on the fifteenth (15th) day after such notice was given. However, it is further provided, that if the vessel(s) insured has not been in port within said fifteen-day period, cancellation shall take effect at 12:00 noon, Standard Time, of the the first day of the vessel's(s') first arrival at any port. In case of cancellation of this policy by the Company, a pro rata premium will be charged and the amount of paid premium in excess of premiums earned to the effective date of cancellation shall be refunded upon demand after cancellation. This policy may be cancelled at any time by mutual agreement of the Assured and the Company.

In the event of nonpayment of premium, the Company may cancel this policy at 12:00 noon, Standard Time, on the tenth (10th) day after notice of cancellation has been given to the Agent.

In the event of total loss or constructive total loss due to perils insured against, prior to cancellation of this policy or otherwise, the full annual premium shall be deemed earned by the Company. The Company shall be entitled to deduct the amount of the full annual premium remaining unpaid at the time of the loss from any payment to the Assured made pursuant to this policy.

## SAVING CLAUSE

To the extent that any of the clauses contained within the Special Terms and Conditions section of this policy conflict with any of the clauses contained within the other portions of this policy, the clauses contained within the Special Terms and Conditions section are to govern.

Where portions of the Special Terms and Conditions section concern the same subject matter as other portions of the policy, but the two clauses or sections can be reconciled without voiding one clause or section, the two clauses or sections should be read and applied together to give meaning to both clauses or sections.

To the extent that any of the clauses or provisions contained within this policy are illegal or void as a matter of public policy, law, or regulation, they are to be reformed to bring them into compliance with the applicable public policy, law, or regulation. Notwithstanding the foregoing, all clauses or provisions contained within the policy that are legal and proper are to be given full force and effect regardless of whether one or more clauses or provisions are illegal or void as a matter of public policy, law or regulation.

To be attached to and forming a part of Policy No. _____MHZ006220D1_____
of the _____UNDERWRITERS INSURANCE COMPANY_____

## BREACH OF WARRANTY

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS NOTED AND AGREED THAT THIS INSURANCE, AS TO THE INTEREST OF THE MORTGAGEES LISTED BELOW ONLY, SHALL NOT BE IMPAIRED OR INVALIDATED BY ANY ACT OR NEGLECT OF THE MORTGAGOR, OWNER, MASTER, AGENT OR CREW OF SAID VESSEL NOR BY FAILURE TO COMPLY WITH ANY WARRANTY OR CONDITION OVER WHICH THE MORTGAGEES HAVE NO CONTROL, PROVIDED HOWEVER, THE MAXIMUM LIMIT OF LIABILITY OF THIS EXTENSION SHALL NOT EXCEED THE MORTGAGE BALANCE AT THE TIME OF THE LOSS.

| VESSEL NO. | VESSEL NAME | BREACH OF WARRANTY AMOUNT | ANNUAL RATE | ANNUAL PREMIUM | NAME OF MORTGAGEE |
|---|---|---|---|---|---|
| 1 | "ENSOLIDO" | $ 138,630.00 | 0.25% | $ 347.00 | First National Bank 701 E. Levee Brownsville, Texas 78521 |
| | | | | | |
| | | | | | |
| | Totals** | $ 138,630.00 | | $ 347.00 | |

Exhibit

"B"

| COMPANY | DESCRIPTION | AMOUNT | BAL OWED |
|---|---|---|---|
| ROBERSON MARINE SEVICES: | PERFORMED SALVAGE AND TOWING OF BOAT | $ 19,155.00 | $ 19,155.00 |
| MILE 533 SHIPYARD INC | SHIPYARD SERVICES TO PUMP OUT AND MAKE TEMPORARY REPAIRS TO VESSEL. | $ 510 00 | |
| UNDERWATER SERVICE INC. | DIVERS SERVICES TO INTALL TEMPORAY PATCH IN BOOTOM OF VESSEL AND COMPLETE PUMPING ORPERATIONS. | $ 1,175.00 | $ - |
| RAY WOLF COMMERICAL DIVING, INC. | AUDIO GAGING OF VESSEL HULL | $ 212.50 | $ - |
| HARRIS BOAT MAINTENANCE | PARTSAL CLEANING AND RENOVATION OF FISH HOLE  TO PREPARE IT TO GO UP ON THE RAILWAY AT BORDER SHIPYARD 2 MEN 246 MAN HOURS AT $15.00 A HOUR. FERNANDO TORRES JR. AND PABLO PAREDES SR. | $ 3,700.00 | $ 3,700.00 |
| BORDER SHIPYARD | REPAIRS MADE TO VESSEL'S BOTTOM'S PLATING, REPACK STUFFINGBOX. PAINT BOTTOM AND RENEW ZINC ANODES. | $ 1,505.71 | $ - |
| SEA HORSE FISHERIES | FOR CLEANUP OF THE REMAINING DEBIS, CEMENT, FOAM AND FREEZER PLATES. ALL FREEZER PARTS AND REPACED 12 ANGLE IRONS. 3 MEN TOTAL MAN HOURS WAS 600 AT $15.00 A HOUR. ATANACIO HERRERA, JOSE SOLORIO AND ROBERTO LUCIO. | $ 9,000.00 | $ 9,000.00 |
| BROWNSVILLE RENTAL CENTER | AIR HAMMER FOR CLEANING OUT ICE BOX | $ 150.00 | $ - |
| HARRIS BOAT MAINTENANCE | INSTALLATION OF STEERING PARTS IN WAY OF FISH HOLD DAMAGE. | $ 506.00 | $ 506 00 |
| JUAN'S ELECTRIC NOTE: WE DID NOT USE THIS COMPANY MARINE REFRIGERTION COMPANY,. INC. | WE GOT A BID FROM JUAN'S ELECTRIC AND IT WAS $11,200.00 LESS $1760.00 SO WE WENT WITH THEM. NOTE: WAS A ESTIMATE FOR REPAIRS AND INSTALLATION OF FREEZER PLATES AND RENVATION OF EXISTING HYDRAULICALLY DRIVEN FEFRIGERATION COMPAMPRESSOR SYSTEM. $ 12960.00 | $11,200.00 | $ 4,516.00 |
| MID-VALLEY URETHANE | FIX DAMAGE TO FREEZER AFTER IT WAS TOTAL CLEANED BY HARRIS BOATS MAINT. AND SEA HORSE FISHERIS. | $ 14,335.68 | $ 7,274.38 |
| ADAN LOPEZ | CARPENTER'S ESTIMATE FOR REBUILDING DAMAGED WOODEN HATCH COVERS AND INSTALLATION OF FIBERGLASS SHEATING OVER INSULATION. | $ 6,177.97 | $ 4,797 97 |
| CONSECO FINANCE ( McCOY'S) | FIBERED ROOF COATING 5 GAL. AND MATERIALS FOR FREEZER | $ 614.03 | $ - |
| POWER SYSTEMS | SHAFT AND BEARNING | $ 145.67 | $ - |
| ZIMCO MARINE, INC. | SHIPYARD LABOR AND MATERIALS TO RECONDITION STEADY BEARING FOUND IN FISH HOLD. BEARINGS WERE SUBMERGED AND SUBJECT TO UNUSUAL STRESS DUE TO DEBRIS WRAPPED AROUND PROPELLOR SHAFT. | $ 1,155.27 | $ 1,155.2? |
| RODCO MARINE SUPPLY | MATERIALS AND SUPPLIES | $ 850.01 | $ 850.? |
| SEA GARDEN SALES | MATERIALS AND SUPPLIES | $ 425.37 | $ 425.? |
| ZIMCO MARINE, INC. | MATERIALS AND SUPPLIES | $ 2,598.45 | $ 2,598.? |
| ANDERSON & ASSOCIATES | METALLURGICAL ANALYSIS OF HULL IN BOTTOM PLATE | $ 1,749.32 | $ 1,749.3? |
| REYES MARINE INDUSTRIES | 2001 SURVEY REPORT NO. 434 THE SURVEY WAS NECESSARY FOR VESSEL REPAIRS. | $ | $ |
| REYES MARINE INDUSTRIES | 2001 SRVEY NO. THAT BOAT IS FIXED AND IS SEA WORHTY | $ | $ |
| | TOTAL | $ 75,165.98 | $ 55,727.7? |

Exhibit "C"