34



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION



FILED

FEB 1 2 2002

Michael N. Milby, Clerk

| | | |
|---|---|---|
| UNDER-WRITERS INSURANCE COMPANY, | § § § | |
| Plaintiff | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-01-186 |
| | § | In Admiralty |
| KANDI SUE, INC. and | § | Rule 9(h) |
| BUSTER HARRIS, | § | |
| Defendant | § | |

### INTERVENOR FIRST NATIONAL BANK'S
### INITIAL DISCLOSURES PURSUANT to F.R.C.P. 26(a)(1)

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, First National Bank, Intervenor herein, and files these its Initial Disclosures,

as required by Fed. R. Civ. P. 26(1)(1). This Intervenor would disclose and declare as follows:

(A)     "the name and, if known, the address and telephone number of each individual likely to have

discoverable information relevant to disputed facts alleged with particularity in the pleadings,

identifying the subjects of the information;"

See attached Exhibit A, "Persons With Knowledge of Relevant Facts."

(B)     "a copy of, or a description by category and location, of all documents, data compilations,

and tangible things in the possession, custody, or control of the party that are relevant to disputed

facts alleged with particularity in the pleadings;"

See attached Exhibit B, "Documents."

(C)     "a computation of any category of damages claimed by the disclosing party, making available

for inspection and copying as under Rule 34 the documents or other evidentiary material not

privileged or protected from disclosure, on which such computation is based, including materials on

the nature and extent of the injuries suffered; and"

Intervenor will supplement.

(D)     "for inspection and copying as under Rule 34 any insurance agreement under which any

person carrying on an insurance business may be liable to satisfy part of all of a judgment which may

be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment."

All applicable policies of insurance would be in the possession, custody or control of

Defendants.

Respectfully submitted,

SANCHEZ, WHITTINGTON, JANIS
& ZABARTE, L.L.P.
100 North Expressway 83
Brownsville, Texas 78521-2284
(956) 546-3731 - Telephone
(956) 546-3765 or 3766 - Fax

By: _____
       Dennis Sanchez
       State Bar No. 17569600
       Federal Admission No. 1594
       ATTORNEYS FOR INTERVENOR
       FIRST NATIONAL BANK

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the parties listed below via certified mail, return receipt requested, on this _/ ᴥ ⧸ᴌ_ day of February, 2002.

Mr. Mark Cohen
Cohen, Gorman & Putnam, L.L.P.
The Niels Esperson Building
808 Travis, Suite 808
Houston, Texas 77002

Mr. Jack G. Carinhas, Jr.
302 Kings Highway, Suite 109
Brownsville, Texas 78521

Mr. Les Cassidy
Woolsey & Cassidy, P.C.
1020 Bank of America
500 North Water St.
Corpus Christi, TX 78471

Dennis Sanchez

**EXHIBIT "A"**
**Persons with Knowledge of Relevant Facts**

1.    Buster Harris
      HC 70, Box 18
      Brownsville, TX 78521
      President of Kandi Sue, Inc., Defendant

2.    Vivian Harris
      HC 70, Box 18
      Brownsville, TX 78521
      Buster Harris' wife

3.    Roberson Marine Services
      Mike Roberson
      P. O. Box 1513
      Port Aransas, TX 78373
      Intervenor

4.    Morgan Cross
      HC 70, Box 5
      Brownsville, Texas 78521
      President and General Manager of Border Shipyards, Inc.

5.    Carlton Reyes
      104 Huisache
      Los Fresnos, Texas 78566
      Marine Surveyor

6.    First National Bank
      701 E. Levee St.
      Brownsville, Texas 78520
      Intervenor

7.    Underwriters Insurance Company
      Plaintiff

8.    Arnie R. Gonzalez, President
      First National Bank
      701 E. Levee St.
      Brownsville, Texas 78520

9.      Mark Cohen
        Cohen, Gorman & Putnam, L.L.P.
        The Niels Esperson Building
        808 Travis, Suite 808
        Houston, TX  77002

10.     Jack G. Carinhas, Jr.
        Attorney at Law
        302 Kings Highway, Suite 109
        Brownsville, Texas 78521
        Attorney for Defendant

11.     Dennis Sanchez
        Sanchez Whittington Janis Zabarte, LLP
        100 North Expressway 83
        Brownsville, Texas  78521
        Attorney for Intervenor, First National Bank

12.     Les Cassidy
        Woolsey & Cassidy, P.C.
        1020 Bank of America
        500 N. Water Street
        Corpus Christi, Texas 78471
        Attorney for Intervenor, Roberson Marine Services

        The above-named persons have knowledge of the facts and evidence made the basis of this lawsuit.

# EXHIBIT "B"
## Documents

1.    Proof of Loss and claim made by First National Bank.

2.    First Preferred Mortgage Note dated May 17, 2000.

3.    First Preferred Ship's Mortgage dated May 17, 2000.

4.    Insurance Policy MHZ 00 6220 D1.

5.    Reyes Marine Survey dated September 9, 1999.

6.    Reyes Marine Survey dated February 1, 2001.

7.    Reyes Marine Survey dated April 15, 2001.

8.    Reyes Marine Survey dated July 5, 2001.

9.    McAllister Marine Survey dated April 12, 2001.

10.   Various repair invoices.

11.   Various bank documents.

# PROOF OF LOSS AND CLAIM

TO:    Underwriters Insurance Company

RE:    Assured:        Kandi Sue, Inc.
        Mortgagee:    First National Bank, Brownsville, Texas
        Vessel:        F/V ENSOLIDO, Official No. 609583
        Date of Loss: January 9, 2001
        Policy:        MHZ006220D1 and its Breach of Warranty Endorsement
        File Number: 2000395 (The Center of Marine Managers, Inc.)

STATE OF TEXAS        §
COUNTY OF CAMERON    §

BEFORE ME, the undersigned authority, on this day personally appeared ARNIE GONZALEZ, who after being by me duly sworn on oath stated and said the following:

1.    My name is ARNIE GONZALEZ. I am over the age of 21 and competent to give this affidavit.

2.    I am the Branch President of First National Bank located at 701 East Levee, Brownsville, Texas 78521, and was the branch president on May 17, 2000. First National Bank is a national banking institution.

3.    On May 17, 2000, Kandi Sue, Inc. was the owner of the shrimp trawler ENSOLIDO, Official No. 609583. I was the bank officer who dealt personally with the officers and directors of Kandi Sue, Inc. in relation to its loan request and general banking relationship. I have personal knowledge of the loan which was extended by First National Bank to Kandi Sue, Inc. on May 17, 2000. On that same date, First National Bank extended a loan to Kandi Sue, Inc. in the amount of One Hundred Thirty-eight Thousand Six Hundred Thirty and No/100 Dollars ($138,630.00). The loan had a maturity date of May 17, 2007, and provided for interest at the rate of two percent (2%) floating over the prime rate as published in *The Wall Street Journal*, Southwest Edition, from time to time, with a floor of nine and one-half percent (9.50%) per annum until maturity. A copy of the Note is attached hereto as EXHIBIT A and incorporated herein for all purposes.

4.    The Promissory Note described above was secured by a First Preferred Ship's Mortgage which was granted on May 17, 2000 by Kandi Sue, Inc. to First National Bank. A true and correct copy of the First Preferred Ship's Mortgage is attached hereto as EXHIBIT B and incorporated herein for all purposes.

5.     Said mortgage was received for record at the National Vessel Documentation Center on June 1, 2000, at 11:20 o'clock a.m. and recorded in Book 00-59 at Page 47.

6.     The maturity date of the note and mortgage described above was set at May 17, 2007.

7.     On or about August 4, 2000, Kandi Sue, Inc. obtained from Underwriters Insurance Company a Policy of Marine Insurance under Policy #MHZ006220D1.   A true and correct copy of the insurance policy is attached hereto as EXHIBIT C and incorporated herein for all purposes.   Attached to and forming a part of the foregoing policy issued by Underwriters Insurance Company was a Breach of Warranty Rider, which Breach of Warranty was in the amount of One Hundred Thirty-eight Thousand Six Hundred Thirty and No/100 Dollars ($138,630.00). First National Bank was named as the Mortgagee under such Breach of Warranty.

8.     On or about January 9, 2001, the F/V ENSOLIDO was engaged in a fishing voyage in the Gulf of Mexico and suffered a loss which consisted of the foundering of the vessel.   The vessel took on water and required towage assistance necessary to bring the vessel to Port Aransas, Texas.   At the time of the foundering of the F/V ENSOLIDO on January 9, 2001, the outstanding unpaid principal balance of the Note was One Hundred Twenty-Two Thousand One Hundred Twenty-Five and No/100 Dollars ($122,125.00).

9.     The F/V ENSOLIDO was later transferred to Port Brownsville, Texas, and the damages suffered to the F/V ENSOLIDO and the expenses incurred in preserving the F/V ENSOLIDO amount to Seventy-five Thousand One Hundred Sixty-five and 98/100 Dollars ($75,165.98).

10.     It is the understanding of the undersigned that Kandi Sue, Inc. has made claim under the insurance policy on the basis that the loss to the F/V ENSOLIDO was either caused by crew negligence or, alternatively, a latent defect.   It is the understanding of the undersigned that the amount of claim made under the policy by Kandi Sue, Inc. was $75,165.98, less a deductible of $5,000.00.

11.     It is the understanding of the undersigned that a lawsuit was filed by Underwriters Insurance Company in the United States District Court, Southern District of Texas, seeking to obtain a declaration that the loss occurring to the F/V ENSOLIDO was not caused by any of the items enumerated by Kandi Sue, Inc., but, rather, that the F/V ENSOLIDO was unseaworthy on August 4, 2000, and also unseaworthy at the time of the commencement of the voyage of the F/V ENSOLIDO.

12.     First National Bank hereby makes claim in the amount of $75,165.98, which represents the reasonable cost of expenses to safeguard the F/V ENSOLIDO and repairs to

repair the F/V ENSOLIDO from the damages suffered by said vessel as a result of the foundering incident which occurred on January 9, 2001.

13.     It is the position of First National Bank that Underwriters Insurance Company, in issuing a Breach of Warranty in favor of First National Bank, undertook to warrant to First National Bank coverage for the amount of the loss suffered by the vessel, up to the amount of $138,660.00, and that such Breach of Warranty coverage issued to First National Bank, as Mortgagee, is not vitiated or affected by any malfeasance, negligence, or other act whatsoever by Kandi Sue, Inc., or its operators. It is the position and claim of First National Bank that Underwriters Insurance Company, under the Standard Mortgage Clause (Breach of Warranty Endorsement) which it issued in favor of First National Bank, as Mortgagee, constitutes an independent or separate undertaking which exists directly between the Mortgagee and the Insurer, and that such coverage issued in favor of First National Bank cannot be invalidated or impaired by any act or neglect of Kandi Sue, Inc., as owner, or its master, crew or agent, nor by any failure of Kandi Sue, Inc. to comply with any warranty or condition over which First National Bank had no control.

14.     First National Bank, according to its best information and belief, alleges that the F/V ENSOLIDO was seaworthy at the inception of the policy on August 4, 2000, and that the vessel owner, Kandi Sue, Inc., utilized due diligence in maintaining the vessel in a seaworthy condition during the term of the policy, including but not limited to, the beginning of the voyage which resulted in the loss to the F/V ENSOLIDO. Attached hereto are the following exhibits:

    a.     EXHIBIT D – Reyes Marine Industries, Inc. survey of M/V ENSOLIDO dated September 9, 1999;

    b.     EXHIBIT E – Reyes Marine Industries, Inc. survey of M/V ENSOLIDO dated February 1, 2001;

    c.     EXHIBIT F – Reyes Marine Industries, Inc. survey of M/V ENSOLIDO dated April 15, 2001;

    d.     EXHIBIT G – Reyes Marine Industries, Inc. survey of M/V ENSOLIDO dated July 5, 2001.

    e.     EXHIBIT H – A copy of the Survey Report from McAllister Marine Surveying Co., which rendered surveying services for and on behalf of Underwriters Insurance Company.

15.     Claim is hereby made for the full amount of the loss suffered by the F/V ENSOLIDO.  If additional information is required, the undersigned will provide such documentation upon request.

FURTHER AFFIANT SAITH NOT.

ARNIE GONZALEZ, Branch President
First National Bank

SWORN TO AND SUBSCRIBED TO BEFORE ME, a Notary Public, on the _3rd_ day of January, 2002.

Notary Public, State of Texas

CHRISTINA LOGAN
Notary Public, State of Texas
My Commission Expires
June 14, 2005

My Commission Expires:

18ₐ  337

# FIRST PREFERRED MORTGAGE NOTE

$138,630.00                    Brownsville, Texas                    May 17, 2000

As hereinafter stipulated, for value received without grace, I, we or either of us, the undersigned, promise to pay to the order of FIRST NATIONAL BANK, the principal sum of $138,630.00 with interest from date of funding until maturity. The rate of interest shall be 2.00% floating over the Prime Rate as published in the Wall Street Journal, Southwest Edition, from time to time, with a floor of 9.50%. The principal indebtedness and accrued interest thereon shall bear interest after maturity at the maximum legal rate allowed by law.

| | |
|---|---|
| **Maker's Mailing Address:** | HC 70 Box 18<br>Brownsville, Cameron County, Texas |
| **Place for Payment:** | 701 East Levee Street<br>Brownsville, Texas 78520 |
| **Maturity Date:** | May 17, 2007 |

### *Annual Interest Rate on Unpaid Principal:*

Annual interest rate computed on the basis of a 360 day year on the unpaid principal balance: The interest on this Note is subject to change from time to time based on changes in an index which is the WALL STREET JOURNAL, SOUTHWEST EDITION PRIME RATE ("the index") PLUS 2.00% FLOATING WITH A FLOOR OF 9.50%. THE INDEX IS THE RATE ESTABLISHED FROM TIME TO TIME BY WALL STREET JOURNAL AS ITS PRIME RATE. Lender will tell me the current index rate upon my request. I, we or either of us, the undersigned, understand that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. The Index currently is 9.50% per annum. The interest rate to be applied prior to the maturity to the unpaid principal balance of this note will be the Index, adjusted if necessary for the maximum rate limitation described below, resulting in an initial rate of 11.50% per annum. Notwithstanding any other provision of this Note, the variable interest rate or rates provided for in this Note will be subject to the following



EXHIBIT
A

maximum rate. NOTICE: Under no circumstances will the interest rate on this Note be more than the lesser of 18.000% per annum or the maximum rate allowed by applicable law. For purposes of this Note, the "maximum rate allowed by applicable law" means the greater of (a) the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or (b) the "Weekly Rate" as referred to in Section 303.201 of the Texas Finance Code and Articles 10.002 and 10.003 of the Texas Credit Title. Unless waived by Lender, any increase in the Interest rate will increase the amounts of my interest payments.

***Annual Interest Rate on Matured, Unpaid Amounts:***  Eighteen Percent (18%) or the maximum rate allowed by state or federal law, whichever is lower.

***Terms of Payment (principal and interest):***

Payments of interest only shall be due and payable monthly on or before the 17th day of June 2000 and July 2000, February through July 2001, February through July 2002, February through July 2003, February through July 2004, February through July 2005, February through July 2006, February through April 2007.

Payments of principal in the sum of $3,301.00 plus accrued interest shall be due and payable on or before the 17th day of August 2000 through December 2000, January 2001, August through December 2001, January 2002, August through December 2002, January 2003, August through December 2003, January 2004, August through December 2004, January 2005, August through December 2005, January 2006, August through December 2006, January 2007, and one **final payment** of the remaining balance of principal plus accrued interest shall be due and payable on or before May 17, 2007.

All payments of both principal and interest shall be paid on or before the 17th day of each month during the term of this note.

Interest computed on the unpaid principal balance is payable quarter-annually as it accrues on the same dates as and in addition to the installments of principal.

First Preferred Mortgage Note                                        Page - 2

If any installment becomes overdue for more than ten (10) days, at bank's option, five percent (5%) of the overdue installment amount will be charged in order to defray the expense of handling the delinquent payment.

If default shall be made in the payment of any installment of principal or interest on this note at maturity, or in case of failure to perform any covenant or agreement contained in any of the instruments securing the payment hereof, then this note and all accrued interest hereon shall, at the election of the legal holder hereof, become immediately due and payable; and any failure to exercise said option shall not constitute a Waiver of the right to exercise the same at any other time.

If this note is placed in the hands of an attorney for collection or is collected through the Probate or Bankruptcy Court or through other legal proceedings, the undersigned promises to pay an additional amount for reasonable attorney fees and collection expenses.

The makers, sureties, endorsers and guarantors of this note hereby severally WAIVE GRACE, presentation for payment, notice of non-payment, protest and notice of protest, demand for payment, presentment for acceleration of maturity and diligence in bringing suit against any party hereto and consent that the time of payment may be extended without notice thereof to any of the sureties, endorsers and/or guarantors on this note.

Full authority is hereby given the legal holder hereof to apply hereon any funds in the possession of such holder belonging to any obligor or endorser hereon to the payment of this note or to any other obligation owing to said holder; or to sell any collateral security, assigned or attached, at public or private sale without notice, at any time after maturity in the event the holder feels unsafe or insecure. The holder may become the purchaser at any such sale.

This note is secured by the lien of a First Preferred Mortgage of even date herewith from the undersigned to the payee hereon on the Vessel **Ensolido**, Official Number 609583, home port Brownsville, Texas.

THIS NOTE AND THE INSTRUMENTS BEING EXECUTED ALONG WITH IT REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

KANDI SUE, INC.

ATTEST:

_Vivian Harris_
Vivian Harris, Secretary

By: _Buster Harris_
Buster Harris,        President

## Unconditional Guarantee

I, we, the undersigned, unconditionally and individually guarantee payment of the foregoing obligation in accordance with the terms and conditions thereof.

SIGNED this _17th_ day of May, 2000.

_Buster Harris_
Buster Harris,        Individually

_Vivian Harris_
Vivian Harris,        Individually

First Preferred Mortgage Note                    Page - 4

Official No. __609583__

# This First Preferred Mortgage, on the vessel(s) "__ENSOLIDO__"

dated _____ May 17 ____ xx 2000

Amount of Mortgage $ _138,630.00_

Maturity Date _____ May 17 ____ xx 2007

and made by __Kandi Sue, Inc., HC 70, Box 18__
__Brownsville, Texas 78521 (100%)__

(hereinafter called "Owner"), to __First National Bank, 701 E. Levee,__
__Brownsville, Texas 78520 (100%)__
_____, (hereinafter called "Mortgagee"),

## WITNESSETH:

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term "vessel" means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by promissory note dated _____ May 17 ____ xx 2000,

the principal amount of $ _138,630.00_, payable to the order of Mortgagee as follows:

Payments of interest only shall be due and payable monthly on or before the 17th day of June 2000 and July 2000, February through July 2001, February through July 2002, February through July 2003, February through July 2004, February through July 2005, February through July 2006, February through April 2007. Payments of principal in the sum of $3,301.00 plus accrued interest shall be due and payable payable on or before the 17th day of August 2000 through December 2000, January 2001, August through December 2001, January 2002, August through December 2002, January 2003, August through December 2003, January 2004, August through December 2004, January 2005, August through December 2005, January 2006, August through December 2006, January 2007, and one final payment of the remaining balance of principal plus accrued interest shall be due and payable on or before May 17, 2007. The rate of interest shall be 2.00% floating over the Prime Rate as published in the Wall Street Journal, Southwest Edition, from time to time, with a floor of 9.50%; containing the usual default, accelerated maturity and attorney fee clauses;

and has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof,

NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the _____ (Type of Vessel) named below and further described in her (their) last marine document(s) issued and identified as follows:

| Name | Home Port | Official Number | Gross Tons | Net Tons |
|------|-----------|-----------------|------------|----------|
| ENSOLIDO | Brownsville, Texas | 609583 | 132 | 90 |

| Enrollment Number | Place Issued | Date Issued |
|-------------------|--------------|-------------|
|  |  |  |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

## ARTICLE I. — Particular Covenants of Owner

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of __Texas__ and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, substance and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the United States save on voyage with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

EXHIBIT

tabbies

B

Neither the mortgagors, the vessels' owner, nor the managing owner, ship's husband, master, nor any person to whom the management of the vessels are entrusted, whether appointed by the mortgagors, as owners of the said vessels, or by a charterer, or by an owner pro hac vice thereof, has or shall have any right, power, or authority to create, incur, or permit to be imposed upon these vessels any liens whatsoever other than for crew's wages, wages of stevedores or salvage, and a properly certified copy of this mortgage shall be carried with the ship's papers on board the vessels and shall be exhibited and a notice reading as follows, printed in plain type of such size that the paragraph of the reading matter shall cover a space not less than six inches wide by nine inches high, framed, under glass, shall be placed and kept prominently in the chart room and in the master's cabin of the vessels:

## "NOTICE OF MORTGAGE"

THESE VESSELS ARE COVERED BY A FIRST SHIP MORTGAGE UNDER THE LAWS OF THE UNITED STATES TO SECURE PAYMENT TO FIRST NATIONAL BANK, BROWNSVILLE, TEXAS, OR ASSIGNS, THE UNPAID BALANCE OF CERTAIN INDEBTEDNESS, UNDER THE TERMS THEREOF. NEITHER THE MORTGAGOR AND OWNER OF SAID VESSELS NOR THE MANAGING OWNER, SHIP'S HUSBAND, MASTER, NOR ANY PERSON TO WHOM THE MANAGEMENT OF THE VESSEL IS ENTRUSTED, WHETHER APPOINTED BY THE MORTGAGOR, AS OWNER OF SAID VESSEL, OR BY A CHARTERER, OR BY AN OWNER PRO HAC VICE THEREOF, HAS ANY RIGHT, POWER, OR AUTHORITY TO CREATE, INCUR, OR PERMIT TO BE IMPOSED UPON THESE VESSELS ANY LIENS WHATSOEVER OTHER THAN FOR CREW'S WAGES, WAGES OF STEVEDORE OR SALVAGE."

### ARTICLE III. — *Possession Until Default*

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

### ARTICLE IV. — *Sundry Provisions*

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their".

FUTURE ADVANCES   This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

KANDI SUE, INC.

ATTESTED:

BY: _Buster Harris_
Buster Harris, President

_Vivian Harris_
Vivian Harris, Secretary

### ACKNOWLEDGMENT

THE STATE OF TEXAS   §
COUNTY OF CAMERON   §

BEFORE ME, the undersigned authority, on this day personally appeared BUSTER HARRIS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same in the capacity stated as the act and deed of KANDI SUE, INC., for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this _17_ day of May, 2000.

_Patricia M. Rivera_
NOTARY PUBLIC

PATRICIA M. RIVERA
MY COMMISSION EXPIRES
October 23, 2001

---

### AFFIDAVIT AS TO GOOD FAITH, LIENS, ETC.

STATE OF ___TEXAS___, COUNTY OF ___CAMERON___, ss.:

Buster Harris

being (severally) duly sworn, depose(s) and say(s) that   he is (they are) the (individual Mortgagor(s)

President   of ___Kandi Sue, Inc.___, the corporation described in

and who (which) executed the foregoing mortgage; and that the said mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditors of the Mortgagor or any lienor of the mortgaged vessel(s). There are no liens, encumbrances, charges or mortgages outstanding against said vessel, other than the lien of the foregoing mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _17_

day of ___May___ xx 2000   _Buster Harris_
Buster Harris

(SEAL)

_Patricia M. Rivera_
PATRICIA M. RIVERA
MY COMMISSION EXPIRES
October 23, 2001

(Notary Public)   Signature(s) of Affiant(s)

OATH OF CITIZENSHIP OF PROPER OFFICER OF MORTGAGEE IS FILED SIMULTANEOUSLY WITH PRESENTATION OF THIS MORTGAGE FOR RECORDING.

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED / FILED

0 1 JUN '00          -11 : 2 0 AM

RECORDED   BOOK 00-59   PAGE 47

DOCUMENTATION OFFICER

# UNDERWRITERS INSURANCE COMPANY
## 200 CORPORATE POINTE, CULVER CITY, CA 90230

**DECLARATIONS**

POLICY NUMBER  MHZ 00 6220 D1

RENEWAL OF:  NEW

**ITEM 1.  Named·Insured and Mailing Address**

BUSTER HARRIS/KANDI SUE, INC.
HC 70 BOX 18
BROWNSVILLE, TX 78521

**Producer's Name and Mailing Address:**

AON RISK SERVICES OF TEXAS, INC.
2000 BERING DRIVE, SUITE 900
HOUSTON, TEXAS 77057

**ITEM 1a.  Loss, if any, payable to:**

ASSURED AND FIRST NATIONAL BANK
BROWNSVILLE, TX, A.T.I.M.A.

**DISCLOSURE OF GUARANTY NONPARTICIPATION**

In the event the insurer is unable to fulfill its contractual obligation under this policy or contract or application or certificate or evidence of coverage, the policy holder or certificate holder is not protected by an insurance guaranty fund or other solvency protection arrangement.

**ITEM 2.  Policy Period:**

From:  August 4, 2000          To.  August 4, 2001

12:00 Noon, Standard Time at the address of the Named Insured as stated herein

---

**ITEM 3. (A)** Description of Property covered:

**(B)** State(s), territories where operations are conducted:
**(C)** Navigational limits where applicable:

1979 Steel Trawler "ENSOLIDO"

**(C)** U.S. Gulf of Mexico as per the Fishing Vessel Clauses Special-Terms and Conditions attached herein.

---

**ITEM 4.** The limit of the Company's liability shall be as stated herein, subject to all the terms of this policy having reference thereto.

| COVERAGE OR CONDITIONS | AMOUNT OF INSURANCE LIMIT OF LIABILITY | RATES/PREMIUMS/DEDUCTIBLES |
|---|---|---|
| Hull and Machinery | Per Schedule | Per Schedule |
| Protection & Indemnity | Per Schedule | Per Schedule |
| Breach of Warranty | Per Schedule | Per Schedule |
| | | **TOTAL PREMIUM:  $ 15,347.00** |

---

**ITEM 5.**  Subject to all of the terms, conditions and exclusions of the forms attached hereto:

| | | |
|---|---|---|
| MHZ522.1  Taylor Form SP39-C | MHZ522.3  F/V Clauses (T&C) | MHZ523.5  Liability Excl. Clause B |
| MHZ522.S1  Hull/P&I Sched. of Vessels | MHZ523.1  A.I.M.U (P&I) Clauses | MZZ529.C  Electronic Date End't C |
| MHZ522.9  S.R.& C.C. End't 87B-46 | MHZ523.4  Pollution Exclusion | |
| MHZ522.  BOW Sched. of Vessels | MHZ522.10  A.I. Radioactive Clause | |

---

This Policy is made and accepted subject to the following provisions and stipulations and those hereinafter stated, which are hereby made a part of this Policy, together with any other provisions, stipulations and agreements as may be added hereto, as provided in this Policy

Date: _____     Countersigned by _____

Authorized Representative

MHZ000.a (Rev (02/10/2000)

**ORIGINAL**



EXHIBIT

C

# IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact your agent at (713) 430-6000

You may call (company)'s toll-free telephone number for information or to make a complaint

1-800-890-9992

You may also write to (company) at:

Underwriters Insurance Company
200 Corporate Pointe
Culver City, CA 90230

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

## 1-800-252-3439

You may write the Texas Department of Insurance:

P. O. Box 149104
Austin, TX 78714-0104
Fax # (512) 475-1771

# PREMIUM OR CLAIMS DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first.  If the dispute is not resolved, you may contact the Texas Department of Insurance.

# ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

Attaching to and forming a part of Policy No   MHZ006220D1     of the    UNDERWRITERS INSURANCE COMPANY

.

*Additional Loss Payee(s):*

It is understood and agreed that the following Financing Agency/Company is added as a Loss Payee hereunder but only in respect to premiums fully earned as the result of a Total or Constructive Total Loss.

> Cananwill, Inc
> 1000 Milwaukee Avenue
> Glenview, IL 60025

*The foregoing provisions shall under no circumstances be deemed or construed to limit, diminish, or qualify coverages otherwise afforded under the policy.*

# UNDERWRITERS INSURANCE COMPANY
### (COMMERCIAL FISHING VESSEL APPLICATION)

### (PLEASE PRINT OR TYPE ANSWERS)

## I. GENERAL INFORMATION:

| FULL NAME & ADDRESS OF OWNER(S): | Buster Harris HC 70 Boxif Brownsville TX. 28521 | |
|---|---|---|
| VESSEL OPERATOR: | NAME: Abel Braue | AGE: 48 |
| | EXPERIENCE: 28 years | |
| AREA OF NAVIGATION: | Gulf of Mexico | |

## II. VESSEL SPECIFICATIONS:

| VESSEL(S)NAME: | Ensolida | REGISTRATION NO: 609583 | |
|---|---|---|---|
| HOMEPORT: | Brownsville | TYPE OF FISHING VESSEL/OPERATION: | Shrimping |
| YEAR BUILT: 1979 | BUILT BY: Texas True Trawlers | | |
| WHERE CONSTRUCTED/ ORIGINALLY BUILT: | Brownsville TX | IF REBUILT: (When and Where): | |
| DIMENSIONS: (Length/Breadth/Depth): | 82.7  B 90'  D 11.8 | CONSTRUCTION: (Wood/Steel/Fiberglass): | Steel |
| GRT: 132 | NET: 90 | VESSEL PURCHASED: (New or Used) Used | DATE PURCHASED: Aug 1995 |
| VALUE NEW: | | CURRENT MARKET VALUE: 210.000 | REPLACEMENT COST VALUE: 450.000 |
| DATE OF LAST SURVEY: April 15 2000 | | IS ROUTINE MAINTENANCE PERFORMED? yes | |

## III. INSURANCE REQUIREMENTS:
### (A) Hull & Machinery:

| CURRENT HULL EXPIRATION DATE: | | CURRENT AND/OR LAST HULL INSURER: | |
|---|---|---|---|
| INSURED VALUE REQUESTED: | | CURRENT INSURED VALUE: | |
| LOSS PAYEES IF ANY: | | | |

### (B) Protection & Indemnity.

| CURRENT P&I EXPIRATION DATE: | | CURRENT AND/OR LAST P&I INSURER: | |
|---|---|---|---|
| LIMIT REQUESTED AND/OR REQUIRED: | | IS CREW COVERAGE REQUIRED? | |
| NUMBER OF CREW (Excluding Captain): | | TOTAL NUMBER OF CREW TO BE INSURED: | |

Case 1:01-cv-00186   Document 34   Filed in TXSD on 02/12/2002   Page 23 of 66

# UNDERWRITERS INSURANCE COMPANY
## (COMMERCIAL FISHING VESSEL APPLICATION)

*"Exhibit"*

### III. INSURANCE REQUIREMENTS: (Continued)

(C) Other Insurance Requirements: (1) Breach of Warranty   (2) Excess Collision Liability   (3) War Risk

| | | |
|---|---|---|
| IS BREACH OF WARRANTY INSURANCE REQUIRED? | | LIMIT/AMOUNT REQUIRED: 138.630.00 |
| FULL NAME & ADDRESS OF MORTGAGEE(S): *First National Bank 701 E Levee Brownsville Tx 285* | | *956-786-7000 Fax 956-986-7045* |
| IS EXCESS COLLISION LIABILITY REQUIRED? | (XS of Insured Hull Value) | IS HULL WAR & P&I WAR RISK REQUIRED? |

### IV. LOSS INFORMATION:

NAME AND DESCRIBE ANY OTHER VESSELS CURRENTLY OWNED OR OPERATED IN THE PAST FIVE (5) YEARS (IF NONE, PLEASE STATE NONE):

*11 Wood Hulls*

GIVE FULL DETAILS OF EACH HULL & MACHINERY OR P&I LOSS, PAID, RESERVED AND OUTSTANDING, INSURED OR UNINSURED, SUSTAINED BY THIS OWNER ON THIS OR ANY OTHER VESSEL FOR THE PAST FIVE (5) YEARS. IF NONE, PLEASE STATE NONE. IF ADDITIONAL SPACE IS NEEDED, PLEASE STATE SEE ATTACHMENT:

| DATE OF LOSS: | DESCRIPTION OF LOSS: | AMOUNT PAID OR RESERVED: |
|---|---|---|
| | *NONE* | |
| | | |

I understand that the information provided in this application and documents attached is the basis for the company's providing such insurance. The entire policy shall be void and coverage will be forfeited if I have concealed or misrepresented any material fact of circumstance in this application.

(By signing this application form the Applicant is not obliged to purchase the insurance nor is the Insurer obliged to accept the insurance risk).

SUBMITTING PRODUCER:  *Aon Risk Services of Texas*

SIGNATURE OF APPLICANT:  *Buster Harris*

PRINTED NAME:  *Buster Harris*

DATE:  *7-28-2000*

TAYLOR                                                                                          *SP-39C*
1953
(Rev. 70)

1  In consideration of the premium and the stipulations, terms and conditions hereinafter mentioned, this Company does
2  hereby insure.              (AS ATTACHED)
3  Assured:                    (AS ATTACHED)
4
5
6  Whose address is            (AS ATTACHED)

7  Loss, if any, payable to:   (AS ATTACHED)
8
9
10 Upon the                    (AS ATTACHED)          called    (AS ATTACHED)
11 Her hull, tackle, apparel, engines, boilers, machinery, appurtenances, equipment, stores, boats and furniture
12 From                        (AS ATTACHED)                    Beginning and ending at noon
13 Until                       (AS ATTACHED)                    Standard Time at place of issuance.

| AMOUNT INSURED HEREUNDER | RATE | PREMIUM | AGREED VALUATION |
|---|---|---|---|
| *(Per Schedule)* | *(Per Schedule)* | *(Per Schedule)* | *(Per Schedule)* |

14

15     Touching the adventures and perils which this Company is contented to bear and take upon itself, they are
16  of the waters named herein, fire, lightning, earthquake, assailing thieves, jettisons, barratry of the master and
17  mariners and all other like perils that shall come to the hurt, detriment or damage of the vessel named herein.
18     This insurance also covers loss of or damage to the vessel named herein caused by explosion on shipboard or
19  elsewhere.
20     This insurance also covers loss of or damage to the vessel named herein directly caused by:
21          Accidents in loading, discharging or handling cargo, or in bunkering;
22          Accidents in going on or off, or while on drydocks, graving docks, ways, marine railways, gridirons or
23          pontoons;
24          Breakdown of motor generators or other electrical machinery and electrical connections thereto, bursting
25          of boilers, breakage of shafts, or any latent defect in the machinery or hull, (excluding the cost and
26          expense of replacing or repairing the defective part);
27          Breakdown of or accidents to nuclear installations or reactors not on board the vessel named herein;
28          Contact with aircraft, rockets or similar missiles, or with any land conveyance;
29          Negligence of charterers and/or repairers provided such charterers and/or repairers are not assured(s)
30          hereunder;
31          Negligence of master, mariners, engineers or pilots;
32  provided such loss or damage has not resulted from want of due diligence by the assured, the owners or managers
33  of the vessel, or any of them.
34     General average, salvage and special charges payable as provided in the contract of affreightment, or fail-
35  ing such provision, or there be no contract of affreightment, payable in accordance with the laws and usages
36  of the port of New York. Provided always that when an adjustment according to the laws and usages of the
37  port of destination is properly demanded by the owners of the cargo, general average shall be paid in accord-
38  ance with same.
39     And it is further agreed that if the vessel named herein ~~and/or her tow, if any,~~ shall come into collision with any
40  other ship or vessel ~~other than her tow, if any,~~ and the assured in consequence of the vessel named herein being at
41  fault shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums in
42  respect of such collision, this Company will pay its proportion of such sum or sums so paid as the amount insured
43  hereunder bears to the agreed valuation of the vessel named herein, provided always that this Company's liability in
44  respect of any one such collision shall not exceed the amount insured hereunder. And in cases where the liability of
45  the vessel named herein has been contested or proceedings have been taken to limit liability, with the consent in writ-
46  ing of this Company this Company will also pay a like proportion of the costs which the assured shall thereby incur,
47  or be compelled to pay; but when both vessels are to blame, then, unless the liability of the owners of one or both such
48  vessels becomes limited by law, claims under this Collision Liability Clause shall be settled on the principle of cross-
49  liabilities as if the owners of each vessel had been compelled to pay to the owners of the other of such vessels such
50  one-half or other proportion of the latter's damages as may have been properly allowed in ascertaining the balance
51  or sum payable by or to the assured in consequence of such collision. (Provided always that this clause shall in no
52  case extend to any sum which the assured may directly, indirectly, or otherwise incur or become liable to pay or
53  shall pay for: removal, destruction or abatement of, or any attempt or failure or neglect to remove, destroy or abate
54  obstructions or wrecks and/or their cargoes or any hazard resulting therefrom; loss of, or damage to, or expense,
55  including demurrage and/or loss of use thereof, in connection with any fixed or movable object, property or thing
56  of whatever nature (excepting other vessels and property thereon); loss of or damage to her tow; cargo, baggage
57  or engagements of the vessel named herein or of her tow; or for loss of life of, or injury to, or illness of,
58  any person.) And provided also that in the event of any claim under this clause being made by anyone other than the own-
59  ers of the vessel named herein, he shall not be entitled to recover in respect of any liability to which the owners of the
60  vessel as such would not be subject, nor to a greater extent than the owners would be entitled in such event to recover
61     In case of any loss or misfortune it shall be lawful and necessary for the assured, their factors, servants and
62  assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the vessel named herein,
63  or any part thereof, without prejudice to this insurance, to the charges whereof this Company will contribute as here-
64  inafter provided. It is agreed that the acts of the assured or this Company, or their agents, in recovering,
65  saving and preserving the property insured in case of disaster shall not be considered a waiver or an acceptance
66  of an abandonment, nor as affirming or denying any liability under this policy; but such acts shall be con-
67  sidered as done for the benefit of all concerned, and without prejudice to the rights of either party.

MHZ522 1 (Rev (9/20/99)

68      Warranted that in case of any sualty or loss which may result in a cla. under this policy the assured shall
69  give this Company prompt notice thereof and reasonable opportunity to be represented on a survey of the damage,
70  each party to name a surveyor, which two surveyors shall proceed to draw specifications as to the extent of the
71  damage and the work required to make the damage good. If the two surveyors agree, such specifications shall be
72  binding on both this Company and the assured, subject nevertheless to policy terms and conditions and the question
73  of whether or not the disaster and resulting loss or damage are covered by this policy. In the event the two survey-
74  ors cannot agree, they must select an umpire, and in the event they cannot agree upon an umpire, either party
75  hereto may apply to the United States District Court for the district in which the home port of the vessel named
76  herein is located for the appointment of an umpire, pursuant to the United States Arbitration Act. The decision of
77  the umpire so appointed shall have the same force and effect as the specifications aforesaid. When specifications
78  have been drawn in either of the modes aforesaid, if the Company shall be dissatisfied with the terms which the
79  assured may obtain for the repair of the damage as specified by said survey, then this Company may require the
80  surveyors or the umpire to submit the specifications prepared as aforesaid to such shipyard, repair men, boat build-
81  ers and shipwrights, as may be selected by such surveyors or the umpire, with a request for bids for such repairs
82  If after reception of such bids, the assured shall elect to accept some other bid than that of the lowest bidder, this
83  Company shall be liable only for its proportion of so much of the sum actually expended to effect repairs
84  specified by the surveyors for its account as does not exceed said lowest bid. In no event however shall this
85  Company respond for an amount in excess of its proportion of the amount actually expended by the assured in
86  effecting such repairs.
87      With respect to physical loss or damage to the vessel named herein this Company shall be liable only for
88  such proportion of such loss or damage as the amount insured hereunder bears to the agreed valuation.
89      In the event of expenditure under the sue and labor clause, this Company will pay the proportion of such
90  expenses that the amount insured hereunder bears to the agreed valuation of the vessel named herein, or that the
91  amount insured hereunder, less loss and/or damage payable under this policy, bears to the actual value of the
92  salved vessel, whichever proportion shall be less.
93      When the contributory value of the vessel named herein is greater than the agreed valuation stated herein
94  the liability of this Company for general average contribution (except in respect of amount made good to the
95  vessel) or salvage shall not exceed that proportion of the total contribution due from the *vessel that* the amount
96  insured hereunder bears to the contributory value; and if because of damage for which this Company is liable as
97  particular average the value of the vessel has been reduced for the purpose of contribution, the amount of the
98  particular average claim under this policy shall be deducted from the amount insured hereunder and this Com-
99  pany shall be liable only for the proportion which such net amount bears to the contributory value.
100     The sum of $ (PER ATTACHED) shall be deducted from the total amount of any or all claims (including claims
101  for sue and labor, collision liability, general average and salvage charges) resulting from any one accident. This
102  deduction does not apply to claims for total or constructive total loss. For the purpose of this clause each accident
103  shall be treated separately, but it is agreed that a sequence of damages arising from the same accident shall be
104  treated as due to that accident.
105     In case of loss, such loss to be paid in thirty days after satisfactory proof of loss and interest shall have
106  been made and presented to this Company, (the amount of any indebtedness due this Company from the assured
107  or any other party interested in this policy being first deducted).
108     Upon making payment under this policy the Company shall be vested with all of the assured's rights of re-
109  covery against any person, corporation, vessel or interest and the assured shall execute and deliver instruments
110  and papers and do whatever else is necessary to secure such rights.
111     Any agreement, contract or act, past or future, expressed or implied, by the assured whereby any right of re-
112  covery of the assured against any vessel, person or corporation is released, decreased, transferred or lost which
113  would, on payment of claim by this Company, belong to this Company but for such agreement, contract or act shall
114  render this policy null and void as to the amount of any such claim, but only to the extent and to the amount that
115  said agreement, contract or act releases, decreases, transfers, or causes the loss of any right of recovery of this
116  Company, but the Company's right to retain or recover the full premium shall not be affected.
117     This Company shall have the option of naming the attorneys who shall represent the assured in the prosecution
118  or defense of any litigation or negotiations between the assured and third parties concerning any claim, loss or inter-
119  est covered by this policy, and this Company shall have the direction of such litigation or negotiations. If the assured
120  shall fail or refuse, to settle any claims authorized by the Company, the liability of the Company to the assured
121  shall be limited to the amount for which settlement could have been made.
122     It is a condition of this policy that no suit, action or proceeding for the recovery of any claim for physical
123  loss of or damage to the vessel named herein shall be maintainable in any court of law or equity unless the same
124  be commenced within twelve (12) months next after the calendar date of the happening of the physical loss or
125  damage out of which the said claim arose. Provided, however, that if by the laws of the state within which this
126  policy is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding
127  be commenced within the shortest limit of time permitted, by the laws of such state, to be fixed herein.
128     In event of damage, cost of repairs to be paid without deduction of one-third, new for old.
129    If claim for total loss is admitted under this policy and sue and labor expenses have been reasonably incurred in
130  excess of any proceeds realized or value recovered, the amount payable under this policy will be the proportion of
131  such excess that the amount insured hereunder (without deduction for loss or damage) bears to the agreed valuation
132  or the sound value of the vessel named herein at the time of the accident, whichever value was greater.
133     It is a condition of this insurance that this Company shall not be liable for unrepaired damage in addition
134  to a total or constructive total loss.
135     No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and re-
136  pairing the vessel named herein shall exceed the agreed valuation.
137     In ascertaining whether the vessel named herein is a constructive total loss the agreed valuation shall be
138  taken as the repaired value, and nothing in respect of the damaged or break-up value of the vessel or wreck shall
139  be taken into account.
140     In the event of total or constructive total loss, no claim to be made by this Company for freight, whether
141  notice of abandonment has been given or not.
142     Any deviation beyond the navigation limits provided herein shall void this policy; but on the return of the
143  vessel in a seaworthy condition, within the limits herein provided, this policy shall reattach and continue in full
144  force and effect, but in no case beyond the termination of this policy.
145    Warranted by the assured that there shall be no other insurance covering physical loss or damage to the
146  vessel named herein other than that which is provided in lines 15 through 33 hereof but permission is granted
147  to carry other insurance of whatever kind or nature not covered by this policy or additional amounts of insurance
148  of the kind or nature covered by this policy other than as provided in lines 15 through 33.
149     This insurance shall be void in case this policy or the vessel named herein, shall be sold, assigned, transferred
150  or pledged, or if there be any change of management or charter of the vessel, without the previous consent in
151  writing of this Company.

MHZ522.1 (Rev.(9/20/99)

152       Notwithstanding anything to ...e contrary contained in this policy, th. insurance is warranted free from
153 any claim for loss. damage or expense caused by or resulting from capture, seizure, arrest, restraint or detainment,
154 or the consequences thereof or of any attempt thereat. or any taking of the vessel, by requisition or otherwise,
155 whether in time of peace or war and whether lawful or otherwise; also from all consequences of hostilities or war-
156 like operations (whether there be a declaration of war or not), but the foregoing shall not exclude collision or
157 contact with aircraft, rockets or similar missiles, or with any fixed or floating object (other than a mine or
158 torpedo), stranding, heavy weather, fire or explosion unless caused directly (and independently of the nature of
159 the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein,
160 is performing) by a hostile act by or against a belligerent power, and for the purpose of this warranty "power"
161 includes any authority maintaining naval, military or air forces in association with a power; also warranted free,
162 whether in time of peace or war, from all loss, damage or expense caused by any weapon of war employing atomic
163 or nuclear fission and/or fusion or other reaction or radioactive force or matter.
164       Further warranted free from the consequences of civil war, revolution, rebellion, insurrection, or civil strife
165 arising therefrom, or piracy.
166       If war risks are hereafter insured by endorsement on the policy, such endorsement shall superseded the above
167 warranty only to the extent that their terms are inconsistent and only while such war risk endorsement remains
168 in force.
169       Warranted free of loss or damage in consequence of strikes, lockouts, political or labor disturbances, civil
170 commotions, riots, martial law, military or usurped power or malicious acts.
171 ~~Either party may cancel this policy by giving ten days notice in writing; if at the option of this Company~~
172 ~~pro rata rates, if at the request of the Assured short rates, will be charged and arrival.~~

---

173                  NAVIGATION LIMITS–SPECIAL CONDITIONS– ENDORSEMENTS, ETC

174        Attached to and made part of Policy No.__MHZ 006220D1__ of the __UNDERWRITERS INSURANCE COMPANY__

To be attached to and forming a part of Policy No. _____ MHZ006220D1 _____

of the _____ UNDERWRITERS INSURANCE COMPANY _____

## Hull & Machinery/Protection & Indemnity

| Vessel No. | Vessel Name | Agreed Value/ Sum Insured | Hull Rate | Hull Deductible | Hull Premium | P&I Limit | P&I Deductible | P&I Premium | Total Premiums |
|---|---|---|---|---|---|---|---|---|---|
| 1 | "ENSOLIDO" | $ 200,000.00 | 3.50% | $ 5,000.00 | $ 7,000.00 | $ 200,000.00 | $ 5,000.00 | $ 8,000.00 | $ 15,000.00 |
|  | Totals** | $ 200,000.00 |  |  | 7,000.00 |  |  | 8,000.00 | $ 15,000.00 |

Each vessel deemed separately insured

MHZ522 15 (Rev. 10/24/01)

To be attached to and forming a part of Policy No.   MHZ006220D1
of the   UNDERWRITERS INSURANCE COMPANY

# BREACH OF WARRANTY

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS NOTED AND AGREED THAT THIS INSURANCE, AS TO THE INTEREST OF THE MORTGAGEES LISTED BELOW ONLY, SHALL NOT BE IMPAIRED OR INVALIDATED BY ANY ACT OR NEGLECT OF THE MORTGAGOR, OWNER, MASTER, AGENT OR CREW OF SAID VESSEL NOR BY FAILURE TO COMPLY WITH ANY WARRANTY OR CONDITION OVER WHICH THE MORTGAGEES HAVE NO CONTROL, PROVIDED HOWEVER, THE MAXIMUM LIMIT OF LIABILITY OF THIS EXTENSION SHALL NOT EXCEED THE MORTGAGE BALANCE AT THE TIME OF THE LOSS.

| VESSEL NO. | VESSEL NAME | BREACH OF WARRANTY AMOUNT | ANNUAL RATE | ANNUAL PREMIUM | NAME OF MORTGAGEE |
|---|---|---|---|---|---|
| 1 | "ENSOLIDO" | $ 138,630.00 | 0.25% | $ 347.00 | First National Bank 701 E. Levee Brownsville, Texas 78521 |
| | | | | | |
| | | | | | |
| | Totals** | $ 138,630.00 | | $ 347.00 | |

MHZ532 S4 (Rev. (10/94/9)

*American Institute*

S.R. & C.C. Endorsement (Hulls)
September 8, 1959

87 B-46

(Revised)

.

In consideration of an additional premium, as provided below, this insurance is extended to cover additional risks, from and after   (INCEPTION)

in accordance with the following clause:-

"This insurance also covers damage to or destruction of the property insured directly caused by strikers, locked out workmen, or persons taking part in labor disturbances or riots or civil commotions or caused by vandalism, sabotage, or malicious mischief, but excluding civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, and warranted free from any claim for delay, detention or loss of use, and free from all loss, damage or expense caused by any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter.

Notwithstanding the exclusions in the F. C. & S. Clause in the within policy 'vandalism,' 'sabotage,' and 'malicious mischief,' as used herein, shall be construed to include wilful or malicious physical injury to or destruction or the described property caused by acts committed by an agent of any Government, party or faction engaged in war, hostilities, or other warlike operations, provided such agent is acting secretly and not in connection with any operations of military or naval armed forces in the country where the described property is situated."

Until further notice the Assured shall pay, for the additional protection afforded by the above clause, an additional premium of   INCLUDED   percent. The Underwriters have the right nevertheless to change this rate at any time on 15 days written notice to the Assured; but the Assured shall have the option to cancel this endorsement as of the time when such change of rate would take effect, provided previous notice of such cancellation be given to the Underwriters. The rate may be changed as above notwithstanding strikes, labor troubles or civil commotions, on board the vessel or elsewhere, may be threatened or actually exist either at the time when such notice is given or when it takes effect.

.

.

..

# FISHING VESSEL CLAUSES-SPECIAL TERMS AND CONDITIONS

### DEFINITION OF "COMPANY" AND "UNDERWRITER"

The terms "Company" and "Underwriter" may be used interchangeably within this policy. The policy includes, but is not limited to, the Application, Statement of Compliance of Recommendations, and the following clauses. "Company" and "Underwriter" mean, when used herein, UNDERWRITERS INSURANCE COMPANY.

### SERVICE

Assured warrants that the vessel(s)_____*(PER SCHEDULE)*_____ insured herein shall be used only for commercial fishing purposes. It is further warranted by the Assured that the vessel(s) insured herein shall not be used for private pleasure purposes, and the vessel(s) insured herein shall not be hired or chartered for any purposes without prior written consent of the Company. This insurance does not cover losses, liabilities, claims, damages, costs or expenses which accrue when the vessel(s) is used for private pleasure purposes without prior written consent of the Company or when the vessel(s) has been hired or chartered without prior written consent of the Company.

### NAVIGATIONAL LIMITS (TRADING WATERS)

Assured warrants that the operation of the vessel(s) shall be confined to the Gulf of Mexico and those navigable waters immediately adjacent thereto not south of 20° north latitude (but including the Gulf of Campeche) nor east of 80° west longitude (but excluding Cuban waters). This insurance does not cover any loss, liability, damage, claim, costs, or expenses which accrue, occur, or arise when the vessel(s) is operated outside the navigational limits defined within the Assured's warranty unless prior written consent of the Company is given.

### PROHIBITED WATERS

This insurance shall not cover loss, damage or expense in consequence of seizure or detention for or on account of any illicit or prohibited trade nor for entering nor for the consequence of entering any prohibited fishing waters nor for violations of any port regulation nor for any claims for wages or provisions furnished to officers or crew whilst the property insured hereunder may be detained as the result of any violation, seizure, detention, loss or disaster or during any subsequent salvage and/or repairs. Notwithstanding the foregoing, loss of life, personal injury and sickness shall not be considered a consequence of entering prohibited fishing waters unless occurring in evading or attempting to evade or escaping from or attempting to escape from arrest, seizure or detention.

### WARRANTY OF SEAWORTHINESS

Assured warrants that at the inception of this policy the vessel(s) insured hereunder shall be in a seaworthy condition and, thereafter, during the currency of this policy, the Assured warrants that he will exercise due diligence to keep the vessel(s) seaworthy, and in all respects fit, tight and properly manned, equipped and supplied. The Assured further warrants that the Assured and/or the Assured's Master will not knowingly permit the vessel(s) insured hereunder to proceed to sea in an unseaworthy condition. Any violation of this warranty of seaworthiness shall void coverage under this policy from the time of such violation, notwithstanding anything contained to the contrary herein.

### SURVEY CLAUSE

The Company has the right to appoint a surveyor of its choice to inspect the insured vessel(s) at any time. The Assured shall cooperate with the Company in making the insured vessel(s) available for survey. All recommendations involving the seaworthiness or safety of the insured vessel(s) made by a surveyor acting on behalf of the Company must be completed as soon as practicable but, in any event, prior to any further commercial fishing operations.

### VESSEL STABILITY

It is warranted by the Assured that any additions, installations, and/or structural changes to any vessel(s) insured which would affect the stability of the vessel(s) will be reported to the Company before the vessel(s) proceeds to sea. It is further warranted by the Assured that the insured Vessel(s) will not proceed to sea until the stability of the insured vessel(s) has been examined and approved by a qualified marine surveyor. Any violations of this warranty shall void coverage under this policy from the time of such violation, notwithstanding anything contained to the contrary herein.

### APPLICATION CLAUSE

It is hereby agreed that the application is attached to and made a part of this policy. The Assured warrants that all of the information on the application is true, correct, and complete to the best of the Assured's knowledge. **The Assured agrees that his statements in the application are warranties and statements of material facts of the Assured, and that this policy is issued by the Company in reliance upon the truth of such warranties and statements of material facts; the Assured agrees that this policy embodies**

## APPLICATION CLAUSE (Continued)

all agreements existing between the Assured and the Company relating to this insurance and any oral agreement or writing relating to the insurance shall not bind the Company and the Assured unless incorporated into the insurance policy. The Assured agrees and understands that if the Assured has concealed or misrepresented any material fact or circumstance, or conceals or misrepresents any material fact or circumstance during the applicable term of this insurance, coverage under this policy will be forfeited, whether before or after a loss, which otherwise was provided.

## MISREPRESENTATION

If the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject matter thereof, or in case of any fraud, attempted fraud, or false swearing by the Assured, touching any matter related to this insurance or to the subject thereof, whether before or after a loss, coverage under this policy will be forfeited which otherwise was granted.

## CARGO EXCLUSION

No claim shall in any case be allowed against this policy for loss, liability, damage, cost, or expense incurred by the Assured, or any other person or entity that may make claim under this policy, in respect to catch and cargo. This insurance is warranted free of any liability imposed on the Assured arising out of the sale and/or consumption of any catch of any insured vessel(s).

## NET CLAUSE

No claim shall in any case be allowed against this policy for loss of, damage to, or expense in connection with fishing or trawling gear during or as a result of fishing operations. "Fishing gear" and "trawling gear" are defined for the purpose of this clause to include, but such definition is not limited to, lines, nets, trawls, rigging, tackle, booms, doors, and attached appurtenances.

## ANCHORS OR CABLES

Notwithstanding anything contained herein to the contrary, this policy does not insure against physical loss of or damage to anchors or anchor cables unless the insured vessel(s) is deemed a total loss hereunder.

## DELIBERATE DAMAGE (POLLUTION HAZARD) CLAUSE

In consideration of the premium paid, and subject to the terms and conditions of this policy, this insurance also covers physical loss of or damage to the vessel(s) directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof resulting directly from damage to the vessel(s) for which the Company is liable under this policy provided such act of governmental authorities has not resulted from want of due diligence by the Assured, the owners or managers of the vessel(s) or any of them to prevent or mitigate such threat. Masters, officers, crew or pilots are not to be considered owners within the meaning of this clause even if they hold shares in the vessel(s).

## HIGH WATER BILGE ALARM SYSTEM WARRANTY

Assured warrants that a high water bilge alarm system is properly installed in the engine room of the insured vessel(s), is fully audible in the pilot house, and is maintained in a fully operative condition. Failure of the Assured to comply with this warranty, whether before or after a loss, will result in forfeiture of coverage under this policy, which otherwise was provided.

## EPIRB WARRANTY

The Assured warrants that the vessel(s) has on board an operating FCC type accepted category 1, float-free, automatically activated, 406 MHz Emergency Position Indicating Radio Beacon (EPIRB) as required by Federal Regulation 46 C.F.R. Part 25.26. Alternatively, the vessel(s) may use a 121.5/243 MHz Class A EPIRB until August 17, 1994, if Federal Regulation 46 C.F.R. Part 25.26 permits use of such equipment by the insured vessel(s). After August 17, 1994, 121.5/243 MHz Class A EPIRB cannot be used on an insured vessel(s) and the insured vessel(s) must have installed aboard a fully operating FCC type accepted category 1, float-free, automatically activated, 406 MHz Emergency Position Indicating Radio Beacon (EPIRB) as required by Federal Regulation 46 C.F.R. Part 25.26. Failure of the Assured to comply with this warranty, whether before or after a loss, will result in forfeiture of coverage under this policy, which otherwise was granted.

## CAPTAIN AND CREW

The Assured warrants that the insured vessel(s) will not put to sea with a total number of persons on board, including the Captain, in excess of Per Application. The Assured warrants that the vessel(s) will not put to sea with a total number of persons on board, including the Captain, of two or less. Should the vessel(s) put to sea with a total number of persons on board in breach of either of the two warranties set out above within this clause, coverage under this policy will be forfeited, which otherwise was granted.
If an owner or part owner of the insured vessel(s) is a Captain or a member of the crew of the insured vessel(s), or an owner or part owner of the vessel(s) is acting as Captain or member of the crew of an insured vessel(s), coverage under the Protection & Indemnity Section of this policy is limited to maintenance and cure for the owner and/or part owner. This provision applies whether the vessel(s) is owned by a corporation, partnership, individual, or individuals.

## MINOR EXCLUSION

It is understood and agreed there shall be no recovery under this policy for any and all loss, liability, damage, costs, or expenses incurred with respect to persons of seventeen (17) years of age or less ("Minors") employed or otherwise on board the insured vessel(s). The Assured may be covered under this policy for any loss, liability, damage, costs or expenses incurred in respect to a "Minor," if the "Minor" is employed as a member of the crew of the insured vessel(s), for an additional premium of $2,500.00. If the Assured pays the additional premium of $2,500.00 to cover a "Minor" employed as a member of the crew of the Insured vessel(s), the limit of liability hereunder shall not exceed $25,000.00 with respect to any one "Minor" nor a total of $25,000.00 if more than one "Minor" is employed on the insured vessel(s).

## PUNITIVE DAMAGES EXCLUSION

There shall in no circumstances be any recovery from the Company under this policy for liability imposed upon the Assured as punitive, exemplary, or treble damages, however described. In addition, there shall in no circumstances be any recovery from the Company for legal fees and expenses incurred in defending a claim for punitive, exemplary, or treble damages.

## P & I DEDUCTIBLE

It is hereby understood and agreed that if the Protection & Indemnity coverage provided under this policy is written subject to a deductible, and the claimed amount of the loss, liability, damage, costs or expenses is in excess of the amount of the deductible, the attorneys and/or claims adjusters appointed by the Company will also act on behalf of the Assured with respect to the amount of the deductible. The Assured further undertakes to furnish immediately upon demand by such attorneys and/or claims adjusters any amount, up to the amount of the deductible, required to negotiate or settle any claim and/or to pay any legal or investigation charges incurred in connection with the loss, liability, damage, costs, or expenses.

## CANCELLATION

This policy may be cancelled at any time at the request of the Assured, in which event the Company shall be entitled to an earned premium at the customary short-rate basis.

This policy may be cancelled at any time by the Company by giving notice to the Agent. Notice to the Agent shall constitute a complete notice of cancellation and this policy shall be null and void at 12:00 noon, Standard Time, at the place of issuance, on the fifteenth (15th) day after such notice was given. However, it is further provided, that if the vessel(s) insured has not been in port within said fifteen-day period, cancellation shall take effect at 12:00 noon, Standard Time, of the the first day of the vessel's(s') first arrival at any port. In case of cancellation of this policy by the Company, a pro rata premium will be charged and the amount of paid premium in excess of premiums earned to the effective date of cancellation shall be refunded upon demand after cancellation. This policy may be cancelled at any time by mutual agreement of the Assured and the Company.

In the event of nonpayment of premium, the Company may cancel this policy at 12:00 noon, Standard Time, on the tenth (10th) day after notice of cancellation has been given to the Agent.

In the event of total loss or constructive total loss due to perils insured against, prior to cancellation of this policy or otherwise, the full annual premium shall be deemed earned by the Company. The Company shall be entitled to deduct the amount of the full annual premium remaining unpaid at the time of the loss from any payment to the Assured made pursuant to this policy.

## SAVING CLAUSE

To the extent that any of the clauses contained within the Special Terms and Conditions section of this policy conflict with any of the clauses contained within the other portions of this policy, the clauses contained within the Special Terms and Conditions section are to govern.

Where clauses of the Special Terms and Conditions section concern the same subject matter as other portions of the policy, but the two clauses or sections can be reconciled without voiding one clause or section, the two clauses or sections should be read and applied together to give meaning to both clauses or sections.

To the extent that any of the clauses or provisions contained within this policy are illegal or void as a matter of public policy, law, or regulation, they are to be reformed to bring them into compliance with the applicable public policy, law, or regulation. Notwithstanding the foregoing, all clauses or provisions contained within the policy that are legal and proper are to be given full force and effect regardless of whether one or more clauses or provisions are illegal or void as a matter of public policy, law or regulation.

To be attached to and forming a part of Policy No. _____ MIIZ006220D1 _____
of the _____ UNDERWRITERS INSURANCE COMPANY _____

## BREACH OF WARRANTY

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS NOTED AND AGREED THAT THIS INSURANCE, AS TO THE INTEREST OF THE MORTGAGEES LISTED BELOW ONLY, SHALL NOT BE IMPAIRED OR INVALIDATED BY ANY ACT OR NEGLECT OF THE MORTGAGOR, OWNER, MASTER, AGENT OR CREW OF SAID VESSEL NOR BY FAILURE TO COMPLY WITH ANY WARRANTY OR CONDITION OVER WHICH THE MORTGAGEES HAVE NO CONTROL, PROVIDED HOWEVER, THE MAXIMUM LIMIT OF LIABILITY OF THIS EXTENSION SHALL NOT EXCEED THE MORTGAGE BALANCE AT THE TIME OF THE LOSS

| VESSEL NO. | VESSEL NAME | BREACH OF WARRANTY AMOUNT | ANNUAL RATE | ANNUAL PREMIUM | NAME OF MORTGAGEE |
|---|---|---|---|---|---|
| 1 | "ENSOLIDO" | $ 138,630 00 | 0 25% | $ 347 00 | First National Bank 701 E Levee Brownsville, Texas 78521 |
| | Totals** | $ 138,630 00 | | $ 347 00 | |

Exhibit

"B"

| COMPANY | DESCRIPTION | AMOUNT | BAL OWED |
|---|---|---|---|
| ROBERSON MARINE SEVICES | PERFORMED SALVAGE AND TOWING OF BOAT | $ 19,155 00 | $ 19,155 00 |
| MILE 533 SHIPYARD INC | SHIPYARD SERVICES TO PUMP OUT AND MAKE TEMPORARY REPAIRS TO VESSEL. | $ 510 00 | |
| UNDERWATER SERVICE INC | DIVERS SERVICES TO INTALL TEMPORAY PATCH IN BOOTOM OF VESSEL AND COMPLETE PUMPING ORPERATIONS | $ 1,175 00 | $ |
| RAY WOLF COMMERICAL DIVING, INC | AUDIO GAGING OF VESSEL HULL | $ 212 50 | $ |
| HARRIS BOAT MAINTENANCE | PARTSAL CLEANING AND RENOVATION OF FISH HOLE TO PREPARE IT TO GO UP ON THE RAILWAY AT BORDER SHIPYARD 2 MEN 246 MAN HOURS AT $15.00 A HOUR. FERNANDO TORRES JR. AND PABLO PAREDES SR. | $ 3,700 00 | $ 3,700 00 |
| BORDER SHIPYARD | REPAIRS MADE TO VESSEL'S BOTTOM'S PLATING, REPACK STUFFINGBOX PAINT BOTTOM AND RENEW ZINC ANODES | $ 1,505 71 | $ |
| SEA HORSE FISHERIES | FOR CLEANUP OF THE REMAINING DEBIS CEMENT, FOAM AND FREEZER PLATES ALL FREEZER PARTS AND REPACED 12 ANGLE IRONS. 3 MEN TOTAL MAN HOURS WAS 600 AT $15.00 A HOUR. ATANACIO HERRERA, JOSE SOLORIO AND ROBERTO LUCIO | $ 9,000 00 | $ 9,000 00 |
| BROWNSVILLE RENTAL CENTER | AIR HAMMER FOR CLEANING OUT ICE BOX | $ 150 00 | $ |
| HARRIS BOAT MAINTENANCE | INSTALLATION OF STEERING PARTS IN WAY OF FISH HOLD DAMAGE. | $ 506 00 | $ 506 00 |
| JUAN'S ELECTRIC NOTE WE DID NOT USE THIS COMPANY MARINE REFRIGERTION COMPANY, INC | WE GOT A BID FROM JUAN'S ELECTRIC AND IT WAS $11,200.00 LESS $1760.00 SO WE WENT WITH THEM. NOTE: WAS A ESTIMATE FOR REPAIRS AND INSTALLATION OF FREEZER PLATES AND RENVATION OF EXISTING HYDRAULICALLY DRIVEN FEFRIGERATION COMPAMPRESSOR SYSTEM. $ 12960.00 | $11,200 00 | $ 4,516 00 |
| MID-VALLEY URETHANE | FIX DAMAGE TO FREEZER AFTER IT WAS TOTAL CLEANED BY HARRIS BOATS MAINT. AND SEA HORSE FISHERIS. | $ 14,335 68 | $ 7,274 38 |
| ADAN LOPEZ | CARPENTER'S ESTIMATE FOR REBUILDING DAMAGED WOODEN HATCH COVERS AND INSTALLATION OF FIBERGLASS SHEATING OVER INSULATION. | $ 6,177 97 | $ 4,797 97 |
| CONSECO FINANCE ( McCOY'S) | FIBERED ROOF COATING 5 GAL. AND MATERIALS FOR FREEZER | $ 614 03 | $ |
| POWER SYSTEMS | SHAFT AND BEARNING | $ 145 67 | $ |
| ZIMCO MARINE, INC | SHIPYARD LABOR AND MATERIALS TO RECONDITION STEADY BEARING FOUND IN FISH HOLD. BEARINGS WERE SUBMERGED AND SUBJECT TO UNUSUAL STRESS DUE TO DEBRIS WRAPPED AROUND PROPELLER SHAFT. | $ 1,155 27 | $ 1,155 27 |
| RODCO MARINE SUPPLY | MATERIALS AND SUPPLIES | $ 850 01 | $ 850 01 |
| SEA GARDEN SALES | MATERIALS AND SUPPLIES | $ 425 37 | $ 425 37 |
| ZIMCO MARINE, INC. | MATERIALS AND SUPPLIES | $ 2,598 45 | $ 2,598 45 |
| ANDERSON & ASSOCIATES | METALLURGICAL ANALYSIS OF HULL IN BOTTOM PLATE | $ 1,749 32 | $ 1,749 32 |
| REYES MARINE INDUSTRIES | 2001 SURVEY REPORT NO. 434 THE SURVEY WAS NECESSARY FOR VESSEL REPAIRS. | $ | $ |
| REYES MARINE INDUSTRIES | 2001 SRVEY NO. THAT BOAT IS FIXED AND IS SEA WORHTY | $ | $ |
| | TOTAL | $ 75,165 98 | $ 55,727 77 |

Exhibit

"C"

Case 1:01-cv-00186  Document 34  Filed in TXSD on 02/12/2002  Page 35 of 66



# REYES MARINE INDUSTRIES, INC.

104 Huisache Street
Los Fresnos, Texas 78566

**Carlton Reyes Marine Surveyor and Consultant**

Home Phone 956 233-4734    Mobile 956-549-2451    Office 956 838 1919



Survey Report No. ___318___        Date __September 9, 1999__

This surveyor agrees to use his best efforts on behalf of those for whom the survey is made, but it is distinctly understood and agreed that this surveyor will have no liability for any errors or omissions, whether due to negligence or otherwise in excess of the actual charge made for this survey, and any and all persons interested in or to be affected hereby accept this report on that basis

**VESSEL:   M/V "ENSOLIDO"**

**OFF.NO:   609583**

**SURVEY:   Condition and Apraisal**

    Acting at the request of Mr. Howard Mason Jr. of Aon Risk Services the undersigned Surveyor did perform a survey on August 26, 1999 attend on board the above named vessel as she lay afloat at Shrimp Basin, Brownsville, Texas for the purpose of checking her general physical condition and to appraise her value thereof.

**VESSEL OWNED:** By Kandi Sue  Inc.
             Star Route HC Box 18
             Brownsville, Texas 78521

**VESSEL'S DESCRIPTION:** All welded steel "V" bottom hull shrimp Trawler with raked stem, square stern, flush deck, 36"  midship to bow 30" midship to stern high closed bulwarks provided with adequate freeing ports. Steel  deckhouse with raised pilot house enclosed in foward end, Steel mast, deck-boom, out-riggers, galvanized steel rod and wire stays..

**ABOVE DECK:** Bow-compartment hatch. Deck house arrangement: Pilot house. One  (1) bunk Captain quarters, Three (3) bunk crew quarters. Toilet/shower. Galley/mess. Engine room hatchway. Aft of deckhouse: Winches. Fish hold hatch. Dip tank. Lazaret hatch.



**EXHIBIT**

_D_

Case 1:01-cv-00186 Document 34 Filed in TXSD on 02/12/2002 Page 36 of 66

**SURVEY NO.** 318                    -2-                    September 9, 1999

**BELOW DECK:** Six (6) watertight and One (1) non-watertight bulkheads.
Peak water tank. Watertight bulkhead. Bow-compartment over double bottom
water tank.   Non-watertight bulkhead. Engine room. Wings fuel tanks
and lube oil and hydraulic oil tanks in engine room. Watertight bulkhead.
Fish hold. Watertight bulkhead. Fuel   tank. Watertight bulkhead. Wings
fuel tanks in lazaret.

**BUILT** in Brownsville Tx in 1979.
**HOME PORT:** Brownsville, Texas.
**DIMENSIONS:**     Length  82.7'        **Width** 22.0'         Depth  11.8'
**TONNAGE:**        Gross  132          Net  90

**GROUND TACKLE:** One (1) 200# Northill type anchor in anchor chute, with
chain pendant and 100 fathoms of 1 1/8" nylon rope, fitted with steel
bitt and deck winch hoisting gear.

**LIFE SAVING EQUIPMENT:** Four (4) approve life jackets. Three (3) life
rings. Flare gun kit. First aid kit. FURUNO 406 MHZ E.P.I.R.B. One (1)
6-man Zodiac  inflatable life raft. One (1) 4-man life raft. All coast
guard required flares.

**MACHINERY AND AUXILIARIES:** Vessel is propelled by a CUMMINS diesel
engine, 6-cylinder Model 500 Series, with Twin Disc marine reverse and
reduction gear with a 6 to 1 ratio. Equipped with lube oil pressure
and fresh water temperature alarm system and float alarm. Closed fresh
water cooling system using keel cooler. Pilot house controls and gauges
checks  out O.K. Stuffing box gland is properly secured. **AUXILIARY**
engines is a 4-cylinder CATERPILLAR diesel engine. No gasoline
auxiliaries on board. Equipped with a loud bilge alarm system.
It is reported that the main engine last major over-haul was 19998.

Case 1:01-cv-00166   Document 34   Filed in TXSD on 02/12/2002   Page 37 of 66

**SURVEY NO.** 318                    -3-                    September 9, 1999

**FREEZER SYSTEM:** One (1) 5F-30 compressor  hydraulic driven of Main engine. Feezer plates in fish hold. Dip tank on deck.

**PUMPS:** Two (2) wash down and bilge pump. One (1) 1¾" Jabsco V-belted off Main engine. One (1)  1¼" Emerson electric pump. Lario fresh water pressure system.

**ELECTRICAL EQUIPMENT:** 32 volt system using four (4) 8-volt batteries, 100-amp alternator V-belted off main engine. 100amp alternator on 4-cylinder CATERPILLAR.   40 KW generator on 4-cylinder CATERPILLAR. ALL wiring, switches and receptacles appear in good condition.

**NAVIGATION EQUIPMENT:** Equipped with required navigation lights. Charts, 5" RITCHIE compass. KONEL depth recorder. FURUNO radar. DuBose  SSB radiotelephone. KENWOOD VHF. FURUNO FL1000 loran/plotter. FURUNO LC-90 loran. COBRA CB.  Spotlight. Fog Bell.

**STEERING GEAR:** Mahogany wheel in pilot house, mechanical steering using sprocket and roller chain through deck to sprocket on rotating shaft aft to sprocket and roller chain to quadrant. Fitted with quadrant stops. Equipped with Wood-Freeman auto-pilot.

**GALLEY:** 4-burner stove with oven, has safety rails. Butane fuel tanks located on deck with shut off valve and regulator near tanks, tank and piping appear in good condition. Stainless/steel sink. GE Refrig/freezer.

Case 1:01-cv-00166  Document 34  Filed in TXSD on 02/12/2002  Page 38 of 66

**FIRE FIGHTING EQUIPMENT:** Six   (6) dry chemical fire extinguishers.

Located: Two (2) 10# in pilot house.         Tested   7-1999

       Two (2) 10# in galley/mess.                  7-1999

       One (1) 10# in bow-compartment.            7-1999

       One (1) 10# in engine room.                  7-1999

Deck hoses piped to deck from pumps in engine room.

**FISH HOLD:** Found clean and appears in to be in good condition. Bilge covers, grating and drainage also in good condition.

**VENTILATION:** Natural ventilation, engine room and bow-compartment vent through engine room trunkway and bow-compartment hatch. Deck house is air-conditioned with a central air/heat unit. Dry exhaust exits through stack aft end of deck house.

**FISHING GEAR:** Equipped with 2-drum 620 DD Stroudsburg winch, separate try-net winch to port. fitted with safety rails and cable guides. All trawl doors, dummy doors and nets appear in good condition. Inspected all riggings, blocks, cables, ropes, etc., found in good condition.

**HOUSEKEEPING:** Last dry-docking reported 1989. Decks well coated with non-skid paint.

      As far as may be ascertained from a general examination of this vessel laying afloat without any removals or opening up to expose areas normally concealed. It is the opinion of the attending surveyor, as hereinafter qualified, that this vessel is in good condition and suitable for operation in the intended service.

**ESTIMATED VALUE:**     Estimated replacement value      $450,000.

                  Estimated present market value    $185,000.

JUN 26'01 14:43 FR AON CLAIMS-MARINE
FEB 26'01 12:47 FR AON CLAIMS-MARINE
Case 1:01-cv-00186   Document 34   Filed in TXSD on 02/12/2002   Page 39 of 66

SURVEY NO. 318                    --5--              September  9, 1999

RECOMMENDATIONS:

(1) Install v-belt guard pump main engine.

(2) Place onboard spare anchor.


THIS SURVEY IS MADE WITHOUT PREJUDICE AND FOR THE BENEFIT OF WHOM IT
MAY CONCERN.


CARLTON REYES, MARINE SURVEYOR

/cr

Case 1:01-cv-00186   Document 34   Filed in TXSD on 02/12/2002   Page 40 of 66

SURVEY NO. 318                    -6-                    September 9, 1999







# REYES MARINE INDUSTRIES, INC.

104 Huisache Street
Los Fresnos, Texas 78566

### Carlton Reyes Marine Surveyor and Consultant

Home Phone 956-233-4734   Mobile 956-549-2461   Office 956-838-1219



Survey Report No. __434__          Date __February 1, 2001__

This surveyor agrees to use his best efforts on behalf of those for whom this survey is made, but it is distinctly understood and agreed that this surveyor will have no liability for any errors or omissions, whether due to negligence or otherwise in excess of the actual charge made for this survey, and any and all persons interested in or to be affected hereby, accept this report on that basis.

## DAMAGE SURVEY
### VESSEL: M/V "ENSOLIDO"
### OFFICIAL NUMBER: 609583

THIS IS TO CERTIFY THAT the undersigned marine surveyor did at the request of Mr. Buster Harris, perform a survey on January 26, 2001 attend on board the above named vessel dry-docked at Border Shipyard, Inc. Shrimp Basin, Brownsville, Texas, in order to ascertain the nature, cause, and extent of damages to the **M/V "ENSOLIDO"** After taking on water while trawling approximately 40 miles South East of **Corpus Christi, Texas** on January 8, 2001.

## VESSEL PARTICULARS:

**BUILT AT=** Brownsville, **Texas**          **YEAR BUILT=** 1979
**HOME PORT:** Brownsville, Texas
**REGISTERED DIMENSIONS:** Length 82.7'  Breadth 22.0'  Depth 11.8'
**REGISTERED TONNAGE:** Gross 132      Net 90

**REGISTERED OWNERS:**  Candi Sue, Inc.
                        Star Route HC Box 5
                        Brownsville, Texas 78521

## VESSEL'S DESCRIPTION:

The subject vessel is an all welded steel construction, single screw, diesel powered, typical Gulf of Mexico Shrimp Trawler with the deckhouse foward. Mast and out-riggers amidships and deck boom, aft deck work area.

**EXHIBIT**

E

Case 1:01-cv-00166  Document 34  Filed in TXSD on 02/12/2002  Page 42 of 66

**REPORTED:**

It was reported that approximately 12:30AM on Jaunary 8, 2001, while underway (trawling) approximately 40 miles South East of Port Aransas, Texas, the **F/V "ENSOLIDO"** started taking on water, they crew were first aware of this after a routine check of the engine room and found that water was coming in to the engine room through the bulkhead packing, The Captain reported that he started the pumps to pump the fish hold, but had problems with the pumps, the fish hold was then opened to check the pumps intake (suction), but found that the water level was too high. Pumps were placed on board and the vessel towed to Port Aransas by the U. S. Navy Ship "WORRIOR" where the water was pumped out, a hole was found in the bottom of the hull in the fish hold compartment, a steel plate with gasket was placed over the hole, bolted to a steel plate on the inside of the hull. The vessel was then brought to Brownsville.

**IN ATTENDANCE:**                                          **REPRESENTING:**

CARLTON REYES                                               BUSTER HARRIS and
**Marine Surveyor**                                         CANDI SUE, INC.
104 Huisache St
Los Fresnos, Texas 78566

BUSTER HARRIS                                               OWNER M/V ENSOLIDO
Star Route HC Box 5
Brownsville, Texas 78527

Mr MORGAN                                                   BORDER SHIPYARD, INC.

Case 1:01-cv-00186  Document 34  Filed in TXSD on 02/12/2002  Page 43 of 66

## UPON EXAMINATION:

| FOUND | RECOMMENDED |
|---|---|
| 1. 4½"X 2" hole in the bottom in the fish hold port side of the keel, Port side of where the tail shaft is coupled to the intermediate shaft. | 1. Crop and insert a section of the bottom plating 18" X 20" prime and paint as original. |
| 2. Fish hold top, sides and bottom polyurethane damaged the remaining insulation is water soaked. | 2. Remove all polyurethane foam, sandblast, zinc, prime and paint. Insulate top and sides with 8" and the bottom as needed to level with polyurethane foam. |
| 3. Bins partitions damaged. | 3. Install new 3/4" marine plywood partitions as needed. |
| 4. All bilge covers damaged. | 4. Fabricate new bilge covers insulate and paint as original. |
| 5. Grease copper tubings from engine room to steady-bearings damaged. | 5. Repair copper tubings as needed. |
| 6. Hatch cover damaged. | 6. Repair and insulate as needed. paint as original. |

Case 1:01-cv-00186   Document 34   Filed in TXSD on 02/12/2002   Page 44 of 66

**SURVEY NO.** 434                    -4-                    February 1, 2001

M/V ENSOLIDO

.

**UPON INSPECTION** (continued)

**FOUND**                              **RECOMMENDED**

7. 5 sets 12' aluminum freezer         3. Install all new 12' aluminum
   plates damaged.                         freezer plates after all
                                           new insulation work is
                                           complete, the plates to be
                                           installed by a refrigeration
                                           technician, the refrigeration
                                           system to be checked by the
                                           technician to make sure it
                                           is operating as original.

**SURVEYOR'S NOTES**

1. It was reported by the Captain that the propeller shaft was secured
   with chain to avoid  any damages to the marine gear while being
   towed.

2. All measurements provided are approximate, contractors are instructed
   to make their own measurements to determine size and thickness of
   materials to be renewed.

3. All removals necessary to effect repairs to be replaced in good
   order.

4. All new and disturbed work to be recoated as original.

5. The damages sighted appeared to be recent in nature and related to
   the incident resulting from the flooding of the fish hold.

.

**SURVEY NO. 434**        -5-        February 1, 2001
M/V ENSOLIDO

**GENERAL CONDITION/REMARKS:**

The subject vessel was found to be in average physical condition reflecting its age and service. Hull sides and stern were relatively fair with only minor indentations noted at the stern corners. Exterior coatings were in good condition. The hull bottom were in good condition and well coated.

A history search of surveys in our files indicate that the vessel has been well maintained, and dry-docked on a regular basis in 1998 and again in 2000. Reported that every time on drydock the bottom were sandswept and painted.


THIS SURVEY IS MADE WITHOUT PREJUDICE AND FOR THE BENEFIT OF WHOM IT MAY CONCERN.


CARLTON REYES, MARINE SURVEYOR

Statement from
Capt Abel Bravo
F/V Ensolido
01-31-01

On Monday night the 8th at approx 12:30 - 100 - 90 miles
SE Corpus Christi
I notiecd there was water coming in through the engine
room bulkhead — I stared the pumps. but after a while
the pumps - it was time for the rigman to get up.
for some reason he went and chaked the fish hold
and found that there was water was pretty high
but the pumps keep clogging up — he called the
most Guard - and within and hour or so the Navy
"Worrior", The worried towed to Aransas Pass
Coast Guard station, and Salvage Co. brought their
pump. They sent the diver to staff the shaft
log but there was still a lot of water coming in —
after we got to the dock was when they found the hole
in the bottom.
Note before the Navy ship started to tow us the
rigman and I went to the engine room and tied the
propellar shaft, so as to not damage the gears while in
tow - I did tell the Surveyor in Aransas that I did
hear a bang but I thought it was a sea -

Statement of
Header on F/V ENSOLIDo
01-31-01
Romel Bermudez

We were Bringing up the tray-net, at that time it
was time for the ingman to get up. when he came
back out the deck he said that the boat seemed
to be two low in the water, we went to the engine
and checked and there was no water in the engine-
room, we then lifted the hatches of the fish hold
and found it was full of water we then tried
tho pump the water out but the pump would
not work. after we were at the dock some of the guys
went down into the fish hold and ~~tighten~~ with wrenches
we they came out they said that they had tighten the
Stuffing box ~~because it was~~ loose. after the dives
put the patch over the hole in the bottom, He told
us that we were ready to go to Brownsville,
we left Aransas Pass Approx: 12:00 oclock and arrived at
brownsville the next morning Approx: 6:00 Am

Header   Romel Bermudez

Statement  Rigman  F/V "Ensolido"
Joseph  Fredrick  Sammuel
Feb, 26, 2001

When I Awoke and went to the back deck the
header was picking up the trynet I open the Fish
hold hatch and found that it had a lot of water
I then open the LAZARET hatch And the LAZARET
had a lot of water. I wanted to get down into the
Fish hold to see if I could save the Shrimp, but the
water was to high, The the Capt called The Const
Guard, we tried to use the pumps to pump the
boat, but none of The pumps would work.
we were then towed to port ARANSAS, we seen that
a lot of wather was Coming in through the rudder shaft
packing, The guys from the NAVY ship tightend the
packing gland on the rudder shaft. we also found
that water was Coming in through the propeller shaft
packing, we also tightened that. This was after
the diver had Stopped the water from Coming in —

Transated by Surveyor CARLTON Reyes.

J Fredrickt



# REYES MARINE INDUSTRIES, INC.

104 Huisache Street
Los Fresnos, Texas 78566

**Carlton Reyes Marine Surveyor and Consultant**

Home Phone 956-233-4734   Mobile 956-549-2461   Office 956-838-1219



Survey Report No. 463 _____   Date   April 15, 2001

This surveyor agrees to use his best efforts on behalf of those for whom this survey is made, but it is distinctly understood and agreed that this surveyor will have no facility for any errors or omissions, whether due to negligence or otherwise in excess of the actual charge made for this survey, and any and all persons interested in or to be affected hereby accept this report on that basis

**VESSEL: M/V "ENSOLIDO"**

**OFFICIAL NUMBER- 609583**

**SURVEY: Condition and Appraisal**

THIS IS TO CERTIFY THAT at the request of Mr. Arnie Gonzales, of First National Bank, Brownsville, Texas the undersigned Marine Surveyor did perform a survey on March 30, 2001 attend onboard the above named vessel as she lay afloat at Shrimp Basin, Brownsville, Texas, for the purpose of checking her general physical condition; to make such recommendations as found necessary in accordance with U. S. Coast Guard requirements; and to appraise her value thereof.

**REGISTERED OWNERS:** KANDI SUE, INC.

Star Route HC Box 5

Brownsville, Texas 78521

**VESSEL PARTICULARS:**

**BUILT=** Brownsville, Texas        **YEAR BUILT=** 1979

**HOME PORT:** Brownsville, Texas

**REGISTERED DIMENSIONS:** Length 82.7'  Breadth 22.0'   Depth 11.8'

**REGISTERED TONNAGE:**    Gross  132    Net 90

**VESSEL'S DESCRIPTION:** The subject vessel is an all welded steel construction, V-bottom hull with raked stem, square stern. Single screw, diesel powered Shrimp Trawler. Above the flush deck is the steel deckhouse, aft of the deckhouse amidship is the mast and outriggers, aft deckboom. Next is the winches; fish hold hatch; Port and starboard door racks; Aft deck work area; Dip brine tank; Lazaret hatch.

**HAUL-OUT:** 2000      **BILGE ALARM:** YES      **ENGINE OVERHAUL:** 1998

**EXHIBIT**

_E_

Case 1:01-cv-00186  Document 34  Filed in TXSD on 02/12/2002  Page 50 of 66

## HULL CONSTRUCTION & ARRANGEMENT:

The subject vessel is an all welded steel construction, Plating thickness are estimated as follows: Keel/Stem - 1" x 6"; Bottom, Sides and Transom - 5/16"; Deck ¼"; Bulkheads 5/16"; Framing and deck beams - ½" X X 3" flatbar on 18" centers. Rub-rail is split 6" schedule 40 pipe. The bulwarks is 48" high foward sweeping to 36" aft, capped with 3" pipe, fitted with adequate freeing ports. The subject vessel is fitted with (4) watertight and (1) non-watertight bulkheads into the following compartments from bow to stern:

First is the peak water tank; Watertight bulkhead; bow-compartment over double bottom water tank; non-Watertight bulkhead; Next aft is the engine room through a non-watertight door; Port and Starboard wing fuel tanks, lube oil tank, hydraulic oil tank and engine day-tank fitted in the engine room; Watertight bulkhead; Fish hold; watertight bulkhead; fuel tank; watertight bulkhead; Aft most is the lazaret.

**FUEL:** Reported total fuel capacity approximately 18,000 gallons
**WATER:** Reported total water capacity approximately 3,500 gallons.

## DECKHOUSE CONSTRUCTION & ARRANGEMENT:

The steel deckhouse is 3/16" plate construction, framed with 5/16" X 2" flatbar. Interior ceiling and wall covering is ¼" paneling. Beginning foward is the raised pilothouse fitted with a console, with the steering wheel in the center, with port and starboard doors, lexan type front windows, (2) pilot chairs. Aft of the pilothouse 4-steps down starboard side is 3-bunk crew quarters; next aft is a formica covered dining table with built seat lockers. A stainless/steel sink is fitted into a formica covered locker; A 4-burner stove; refrigerator. Port side is the toilet/shower and lavatory room; 1-bunk Captain's quarters; Engine room access/escape hatchway; aft exit door to back deck to port. Engine dry exhaust exits through deck through deckhouse aft end of the deckhouse.

Case 1:01-cv-00166  Document 34   Filed in TXSD on 02/12/2002   Page 51 of 66

**GALLEY EQUIPMENT:** Vessel is equipped with a 4-burner butane gas stove with oven, fitted with safety rails.  The butane gas tanks are well secured to the starboard side of the deckhouse, a butane regulator is fitted near the tanks, tanks and piping appears serviceable. The galley is also fitted with a GE refrig.

**GROUND TACKLE:** A northill type 200# anchor in anchor chute shackled to chain pendant shackled to 100 fathoms of 1 1/8" nylon rope, fitted with steel bitt and deck winch hoisting gear  through block and tackle to cathead on trawl winch.

**LIFE SAVING EQUIPMENT:**   Four  (4) life jackets. Three (3) life rings. One (1) ZODIAC 4-man inflatable life raft. FURUNO Category 1 406 MHz EPIRB. Distress flares. First aid kit. (1) 4-man life raft. **BILGE ALARM SYSTEM.**

**MACHINERY AND PROPULSION:** The subject vessel is propelled by a CUMMINS diesel engine, inline 6-cylinder Model  KT-A-500 with a TWIN DISC  MG-518 marine reverse and reduction gear with a 5.9 to 1 ratio. The engine drives a single four 4-bladed 59" bronze propeller inside a 61" kort nozzle via a 4" steel jumper shaft through a Douglas type steady-bearing coupled to a 4" stainless steel tailshaft. The engine is equipped with lube oil pressure and fresh water temperature alarm system and daytank float alarm. Engine is cooled through a closed fresh water cooling system using keel cooler. Fitted with dry exhaust. Fitted with pilot house controls and engine monitoring gauges. Stuffing box gland is properly secured.

### AUXILIARIES:

1- Vessel is  equipped with an inline 4-cylinder 4-cycle  CATERPILLAR diesel engine, the engine is keel-cooled. fitted with dry exhaust. The engine  drives a 40KW 120/208-VAC generator.

Case 1:01-cv-00186  Document 34  Filed in TXSD on 02/12/2002  Page 52 of 66

**FISH HOLD & FREEZER SYSTEM:** Subject vessel is fitted with (1) 5F30
CARYLE compressor, hydraulic driven off main engine. The system is
cooled by a keel-cooler condensor. Freezer plates mounted in the fish
hold. Wood/fiberglass dip brine tank on deck. (see Surveyors comments).

**PUMPS:** Two (2) wash down and bilge/fire pumps. (1) $1\frac{1}{2}$" electric pump,
in engine room. (1) $1\frac{1}{4}$" JABSCO v-belted off main engine. LARIO 32VDC
fresh water pressure system.

**ELECTRICAL EQUIPMENT:** 32-volt-DC system using four (4) 8-volt batteries,
located in a suitable tray in bow-compartment. 100-amp alternator
v-belted off auxiliary. The 120/240-VAC system is provided by a 40KW
generator driven off the auxiliary engine. All wiring, switches and
receptacles are marine approved and appear to be in good condition.
Electrical systems are protected by overload circuit breakers.
The lighting system is 32-VDC/120-VAC. The deck lights are 120-VAC
day bright deck lights.

**NAVIGATION & ELECTRONIC EQUIPMENT:** Equipped with required navigation
lights. Charts, 5" RITCHIE magnetic compass. Fog bell.

(1) DUBOSE SSB Transciever              (1) FURUNO radar
(1) FURUNO LC-90 Loran                  (1) FURUNO LP1000 Loran /plotter
(1) KENWOOD VHF                         (1) KONEL/FURUNO Depth Recorder
(1) COBRA CB

**STEERING GEAR:** Wood spoked wheel in pilothouse, mechanical steering
using sprocket and roller chain through deck to sprocket on rotating
shaft aft to sprocket and roller chain to quadrant. Fitted with stops.
The rudder stock packing gland appears to be in good condition. Equipped
with a Wood-Freeman auto-pilot.

**SURVEY NO. 463**                    -5-                    April 15, 2001
M/V ENSOLIDO

**FIRE FIGHTING EQUIPMENT:**  Five   (5) fire extinguishers.
Located: Two (2)    5# in pilothouse                    Tested  05-1999
         Two (2)   10# in galley/mess                            05-1999
         One (1)   10# in engine room                            05-1999
1¼" deck hoses  on deck piped to deck from pumps  in engine room.

**VENTILATION:** Engine room and bow-compartment vent through engine room
exit hatch. The deckhouse is cooled/heated with a central air/heat unit.

**FISHING GEAR:** Equipped with 2-drum STROUDSBURG trawl winch with (2)
catheads, driven off main engine PTO, a separate try-net winch is fitted
to the starboard on the main winch,  the winches is fitted with safety
rails and cable guides. All trawl doors and nets appear to be in good
condition. Inspected all riggings, blocks, cables, ropes, etc., found
in fair condition.

**MAST,  OUTRIGGERS & DECK-BOOM:** The A-frame steel mast is 8"  pipe
construction with 7/8" rod step pads. supports are 3" pipe and 7/8"
rod stays. The outriggers are approximately 50' total length, hinged
from the corners of the deckhouse, they are constructed of 6" pipe,
with angle longitudinal stiffeners. The A-frame deck boom is 6" pipe
construction, 7/8" rod step pads. The stern ladder is constructed of
3" pipe rails and 7/8"  rod rungs. All of the riggings is fitted with
steel rod and wire stays.

**GENERAL CONDITION/COMMENTS:** The vessel's hull sides and stern were in
fair condition, Coatings on the hull, deck, deckhouse and riggings were
fair. The interior of the deckhouse was in fair/poor condition. The
engine room and bow-compartment was in good condition. The Lazaret was
found in fair condition.
It was reported that the fish hold was completely flooded through a
hole in the bottom of the vessel, causing damages to the insulation
and the freezer plates, The vessel was hauled out and the bottom was
repaired, the fish hold is now being repaired.

Case 1:01-cv-00186 Document 34 Filed in TXSD on 02/12/2002 Page 54 of 66

**SURVEY NO. 463**                         −6−                         April 15, 2001
M/V ENSOLIDO

     As far as may be ascertained from a general examination of this
vessel laying afloat, without removals or opening up to expose areas
normally concealed, or audio gauging for structural thickness, or
opening up or testing any machinery, it is the opinion of the attending
Surveyor, as hereinafter qualified, that the subject vessel is in
satisfactory condition and suitable for operation in the intended service

**ESTIMATED VALUE:**

              Estimated replacement value        $450,000.
              Estimated present market value      $250,000.

**RECOMMENDATIONS:**
NONE

THIS SURVEY IS MADE WITHOUT PREJUDICE AND FOR THE BENEFIT OF WHOM IT
MAY CONCERN.

                    CARLTON REYES, MARINE SURVEYOR



# REYES MARINE INDUSTRIES, INC.

104 Huisache Street
Los Fresnos, Texas 78566

**Carlton Reyes Marine Surveyor and Consultant**

Home Phone 956-233-4734   Mobile 956-549-2461   Office 956-838-1219



Survey Report No. __476__          Date __July 5, 2001__

This surveyor agrees to use his best efforts on behalf of those for whom this survey is made, but it is distinctly understood and agreed that this surveyor will have no liability for any errors or omissions, whether due to negligence or otherwise in excess of the actual charge made for this survey, and any and all persons interested in or to be affected hereby accept this report on that basis.

Mr. Jack Carinhas
302 Kings Highway
Brownsville, Texas 78521

**REF: F/V "ENSOLIDO"**

Dear Mr. Carinhas:

As you requested, I did do a walk through inspection on June 28, 2001, of the **F/V "ENSOLIDO"** while docked at the Shrimp Basin, Brownsville, Texas, for the purpose of updating survey report No. 463, dated April 15, 2001.

Upon inspection the following condition was noted:

1- Repairs to the fish hold, bow-compartment tank, and main trawl winch that was under repairs when the vessel was surveyed on March 30, 2001, has been completed.

2- The vessel appears to be in good condition, hull, all riggings, electronics, trawl gears, fire extinguishers, etc.

Mr. Carinhas, as you recall the vessel was dry-docked in January, 2001, to repair a hole in her bottom, at which time I inspected her bottom and made recommendations as to how to make the repairs, I did follow up and found that the repairs were completed as recommended.



EXHIBIT

__G__

-2-

**F/V "ENSOLIDO"**

**Along** with **a visual** inspection, I did do a hammer testing of various areas of the vessel's bottom, all tested areas were considered to be in good condition.

THIS REPORT IS SUBMITTED WITHOUT PREJUDICE AND FOR THE BENEFIT OF WHOM IT MAY CONCERN.

Carlton Reyes
Marine Surveyor

ATTACHMENTS:

1- Survey report No. 463



# REYES MARINE INDUSTRIES, INC.

104 Huisache Street

Los Fresnos, Texas 78566

## Carlton Reyes Marine Surveyor and Consultant

Home Phone 956-233-4734    Mobile 956-549-2461    Office 956-838-1219



Survey Report No ___463___    Date __April 15, 2001__

This surveyor agrees to use his best efforts on behalf of those for whom this survey is made, but it is distinctly understood and agreed that this surveyor will have no liability for any errors or omissions whether due to negligence or otherwise in excess of the actual charge made for this survey, and any and all persons interested in or to be affected hereby accept this report on that basis

**VESSEL:  M/V "ENSOLIDO"**

**OFFICIAL NUMBER- 609583**

**SURVEY: Condition and Appraisal**

THIS IS TO CERTIFY THAT at the request of Mr. Arnie Gonzales, of First National Bank, Brownsville, Texas the undersigned Marine Surveyor did perform a survey on March 30, 2001 attend onboard the above named vessel as she lay afloat at Shrimp Basin, Brownsville, Texas, for the purpose of checking her general physical condition; to make such recommendations as found necessary in accordance with U. S. Coast Guard requirements; and to appraise her value thereof.

**REGISTERED OWNERS:** KANDI SUE, INC.

Star Route HC Box 5

Brownsville, Texas 78521

**VESSEL PARTICULARS:**

**BUILT=** Brownsville, Texas          **YEAR BUILT=** 1979

**HOME PORT:** Brownsville, Texas

**REGISTERED DIMENSIONS:** Length 82.7'  Breadth 22.0'   Depth  11.8'

**REGISTERED TONNAGE:**    Gross  132    Net 90

**VESSEL'S DESCRIPTION:** The subject vessel is an all welded steel construction, V-bottom hull with raked stem, square stern. Single screw, diesel powered Shrimp Trawler. Above the flush deck is the steel deckhouse, aft of the deckhouse amidship is the mast and outriggers, aft deckboom. Next is the winches; fish hold hatch; Port and starboard door racks; Aft deck work area; Dip brine tank; Lazaret hatch.

**HAUL-OUT:** 2000      **BILGE ALARM:** YES      **ENGINE OVERHAUL:** 1998

Case 1:01-cv-00186  Document 34  Filed in TXSD on 02/12/2002  Page 58 of 66

## HULL CONSTRUCTION & ARRANGEMENT:

The subject vessel is an all welded steel construction, Plating thickness are estimated as follows: Keel, Stem - 1" x 6";  Bottom, Sides and Transom - 5/16"; Deck ¼";  Bulkheads 5/16"; Framing and deck beams - ½" X X 3" flatbar on 18" centers. Rub-rail is split 6" schedule 40 pipe. The bulwarks is 48" high foward sweeping to 36" aft, capped with 3" pipe, fitted with adequate freeing ports. The subject vessel is fitted with (4) watertight and (1) non-watertight bulkheads into the following compartments from bow to stern:

First is the peak  water tank; Watertight bulkhead; bow-compartment over double bottom water tank; non-Watertight bulkhead; Next aft is the engine room through a non-watertight door; Port and Starboard wing fuel tanks, lube oil tank, hydrualic oil tank and engine day-tank fitted in the engine room; Watertight bulkhead; Fish hold; watertight bulkhead; fuel tank; watertight bulkhead; Aft most is the lazaret.

**FUEL:** Reported total fuel capacity approximately 18,000 gallons
**WATER:** Reported total water capacity approximately 3,500 gallons.

## DECKHOUSE CONSTRUCTION & ARRANGEMENT:

The steel deckhouse is 3/16" plate construction, framed with 5/16" X 2" flatbar. Interior ceiling and wall covering is ¼" paneling. Beginning foward is the raised pilothouse fitted with a console, with the steering wheel in the center, with port and starboard doors, lexan type front windows, (2) pilot chairs.   Aft of the pilothouse 4-steps down starboard side is 3-bunk crew quarters; next aft is a formica covered dining table with built seat lockers. A stainless/steel sink is fitted into a formica covered locker; A 4-burner stove; refrigerator. Port side is the toilet/shower and lavatory room; 1-bunk Captain's quarters; Engine room access/escape hatchway; aft exit door to back deck to port. Engine dry exhaust exits through deck through deckhouse aft end of the deckhouse.

**GALLEY EQUIPMENT:** Vessel is equipped with a 4-burner butane gas stove with oven, fitted with safety rails. The butane gas tanks are well secured to the starboard side of the deckhouse, a butane regulator is fitted near the tanks, tanks and piping appears serviceable. The galley is also fitted with a GE refrig.

**GROUND TACKLE:** A northill type 200# anchor in anchor chute shackled to chain pendant shackled to 100 fathoms of 1 1/8" nylon rope, fitted with steel bitt and deck winch hoisting gear through block and tackle to cathead on trawl winch.

**LIFE SAVING EQUIPMENT:** Four (4) life jackets. Three (3) life rings. One (1) ZODIAC 4-man inflatable life raft. FURUNO Category 1 406 MHz EPIRB. Distress flares. First aid kit. (1) 4-man life raft. **BILGE ALARM SYSTEM.**

**MACHINERY AND PROPULSION:** The subject vessel is propelled by a CUMMINS diesel engine, inline 6-cylinder Model KT-A-500 with a TWIN DISC MG-518 marine reverse and reduction gear with a 5.9 to 1 ratio. The engine drives a single four 4-bladed 59" bronze propeller inside a 61" kort nozzle via a 4" steel jumper shaft through a Douglas type steady-bearing coupled to a 4" stainless steel tailshaft. The engine is equipped with lube oil pressure and fresh water temperature alarm system and daytank float alarm. Engine is cooled through a closed fresh water cooling system using keel cooler. Fitted with dry exhaust. Fitted with pilot house controls and engine monitoring gauges. Stuffing box gland is properly secured.

**AUXILIARIES:**

1- Vessel is equipped with an inline 4-cylinder 4-cycle CATERPILLAR diesel engine, the engine is keel-cooled. fitted with dry exhaust. The engine drives a 40KW 120/208-VAC generator.

Case 1:01-cv-00186   Document 34   Filed in TXSD on 02/12/2002   Page 60 of 66

**FISH HOLD & FREEZER SYSTEM:** Subject vessel is fitted with (1) 5F30
CARYLE compressor, hydraulic driven off main engine. The system is
cooled by a keel-cooler condensor. Freezer plates mounted in the fish
hold. Wood/fiberglass dip brine tank on deck. (see Surveyors comments).

**PUMPS:** Two (2) wash down and bilge/fire pumps. (1) $1\frac{1}{4}$" electric pump.
in engine room. (1) $1\frac{1}{4}$" JABSCO v-belted off main engine. LARIO 32VDC
fresh water pressure system.

**ELECTRICAL EQUIPMENT:** 32-volt-DC system using four (4) 8-volt batteries,
located in a suitable tray in bow-compartment. 100-amp alternator
v-belted off auxiliary. The 120/240-VAC system is provided by a 40KW
generator driven off the auxiliary engine. All wiring, switches and
receptacles are marine approved and appear to be in good condition.
Electrical systems are protected by overload circuit breakers.
The lighting system is 32-VDC/120-VAC. The deck lights are 120-VAC
day bright deck lights.

**NAVIGATION & ELECTRONIC EQUIPMENT:** Equipped with required navigation
lights. Charts, 5" RITCHIE magnetic compass. Fog bell.

(1) DUBOSE SSB Transciever        (1) FURUNO radar
(1) FURUNO LC-90 Loran            (1) FURUNO LP1000 Loran /plotter
(1) KENWOOD VHF                   (1) KONEL/FURUNO Depth Recorder
(1) COBRA CB

**STEERING GEAR:** Wood spoked wheel in pilothouse, mechanical steering
using sprocket and roller chain through deck to sprocket on rotating
shaft aft to sprocket and roller chain to quadrant. Fitted with stops.
The rudder stock packing gland appears to be in good condition. Equipped
with a Wood-Freeman auto-pilot.

Case 1:01-cv-00186   Document 34   Filed in TXSD on 02/12/2002   Page 61 of 66

**FIRE FIGHTING EQUIPMENT:** Five  (5) fire extinguishers.
Located: Two (2)    5# in pilothouse           Tested  05-1999
         Two (2)   10# in galley/mess                  05-1999
         One (1)   10# in engine room                  05-1999
$1\frac{1}{4}$" deck hoses  on deck piped to deck from pumps  in engine room.

**VENTILATION:** Engine room and bow-compartment vent through engine room
exit hatch. The deckhouse is cooled/heated with a central air/heat unit.

**FISHING GEAR:** Equipped with 2-drum STROUDSBURG trawl winch with (2)
catheads, driven off main engine PTO, a separate try-net winch is fitted
to the starboard on the main winch,  the winches is fitted with safety
rails and cable guides. All trawl doors and nets appear to be in good
condition. Inspected all riggings, blocks, cables, ropes, etc., found
in fair condition.

**MAST,  OUTRIGGERS  &  DECK-BOOM:** The  A-frame  steel  mast  is  8"  pipe
construction  with  7/8"  rod  step  pads.  supports  are  3"  pipe  and  7/8"
rod  stays.  The  outriggers  are  approximately  50'  total  length,  hinged
from  the  corners  of  the  deckhouse,  they  are  constructed  of  6"  pipe,
with  angle  longitudinal  stiffeners.  The  A-frame  deck  boom  is  6"  pipe
construction,  7/8"  rod  step  pads.  The  stern  ladder  is  constructed  of
3"  pipe  rails  and  7/8"   rod  rungs.  All  of  the  riggings  is  fitted  with
steel rod and wire stays.

**GENERAL CONDITION/COMMENTS:** The  vessel's  hull  sides  and  stern  were  in
fair  condition,  Coatings  on  the  hull,  deck,  deckhouse  and  riggings  were
fair.  The  interior  of  the  deckhouse  was  in  fair/poor  condition.  The
engine  room  and  bow-compartment  was  in  good  condition.  The  Lazaret  was
found in fair condition.
It  was  reported  that  the  fish  hold  was  completely  flooded  through  a
hole  in  the  bottom  of  the  vessel,  causing  damages  to  the  insulation
and  the  freezer  plates,  The  vessel  was  hauled  out  and  the  bottom  was
repaired, the fish hold is now being repaired.

Case 1:01-cv-00186  Document 34   Filed in TXSD on 02/12/2002  Page 62 of 66

M/V ENSOLIDO

As far as may be ascertained from a general examination of this vessel laying afloat, without removals or opening up to expose areas normally concealed, or audio gauging for structural thickness, or opening up or testing any machinery, it is the opinion of the attending Surveyor, as hereinafter qualified, that the subject vessel is in satisfactory condition and suitable for operation in the intended service

**ESTIMATED VALUE:**

|  |  |
|---|---|
| Estimated replacement value | $450,000. |
| Estimated present market value | $250,000. |

**RECOMMENDATIONS:**

NONE

THIS SURVEY IS MADE WITHOUT PREJUDICE AND FOR THE BENEFIT OF WHOM IT MAY CONCERN.

CARLTON REYES, MARINE SURVEYOR

# McALLISTER
# MARINE SURVEYING
# COMPANY

P.O. Box 6375
Corpus Christi, TX 78466
mcmarine@infi.net
Fax (361) 882-4678

Marc A. McAllister
NAMS Certified
ABYC  NFPA
(361) 882-4877

April 12, 2001

Center Marine Managers, Inc.
Wall Street Plaza
88 Pine St., 11th Floor
New York, NY 10005

Attn:  Ms. Lorna Rosquites
       Marine Claims Manager

RE:    F/V "ENSOLIDO" Invoice Review
       Our File No.: D01-001
       Your File No.: Unknown

Dear Ms. Rosquites:

I recently received the enclosed estimates and invoices submitted to vessel underwriters as costs associated with the repair of damage sustained in consequence of a partial seeking of the referenced vessel which occurred during a fishing voyage in the western Gulf Of Mexico approximately 45 miles south east of Aransas Pass, Texas on January 9, 2001 at/about 0100 hours. Also included is a recap of the invoices prepared by the owner and addressed to AON Risk Services of Texas, Inc. I have reviewed the documents and can offer the following information.

1.   **Roberson Marine Services** - Invoice dated 01-10-2001, Invoice for towing operations on F/V "ENSOLIDO". The invoice appears to have redundant charges and is considered to be excessive for work performed. The invoice describes work performed as "salvage" however only towing service was requested by the vessel owner. It is recommended that the invoice amount be renegotiated prior to payment.

     Invoice Amount                              $19,155.00

Amount considered to be fair and reasonable     $10,000.00

EXHIBIT
H

04/20/01  FRI 14:51  [TX/RX NO 9960]

2.  **Marine Refrigeration Company, Inc.** - Estimate for repair and installation of freezer plates and renovation of existing hydraulically driven refrigeration compressor system.

        Invoice Amount        $12,960.00

3.  **Ray Wolf Commercial Diving, Inc.** - Invoice No. 01026, Invoice for audio gaging of vessel hull. Invoice indicates 1.5 hours of ultra sonic testing. No audio gaging report indicating findings has been received. It is recommended that no payment be considered until the audio gaging report is provided.

4.  **Mile 533 Shipyard** - Invoice No. 1547, Shipyard Services to pump out and make temporary repairs to vessel. This invoice is considered to be fair, reasonable and attributable to the incident.

        Invoice Amount        $510.00

5.  **Border Shipyards, Inc.** - Invoice No. 1182, Repairs made to vessel's bottom plating, repack stuffing box, paint bottom and renew zinc anodes. The invoice is considered to be fair, reasonable and attributable to the incident.

        Invoice Amount        $1,505.71

6.  **Harris Boat Maintenance** - Invoice No. 8990, Installation of steering parts in way of fish hold damage. This invoice is considered to be fair, reasonable and applicable to the incident.

        Invoice Amount        $506.00

7.  **Harris Boat Maintenance** - Invoice No. 8988, Invoice for cleaning and renovation of fish hold. The invoice does not indicate the number of man hours or personnel involved in repairs. The invoice is considered to be fair, reasonable and applicable to the incident.

        Invoice Amount        $3,700.00

8.  **Sea Horse Fisheries, Inc.** - Invoice No. 12001, This invoice includes items identical to items found on the Harris Boat Maintenance Invoice No. 8988. The invoice does not indicate hourly wages, man hours or number of personnel. The invoice includes replacement of 12 "angle irons". The reason for replacement of these structures is unknown. This invoice requires further clarification prior to approval.

        Invoice Amount        $9,000.00

F/V "ENSOLIDO" Invoice Review
Lorna Rusquites
Page-3-

9    Adan Lopez - Estimate, carpenter's estimate for rebuilding damaged wooden hatch covers and installation of fiberglass sheathing over insulation. The estimate is considered to be fair, reasonable and applicable to the incident.

        Estimate Amount            $6,177.97

10.  Mid-County Urethane - Estimated dated January 29, 2001, bid to renew damaged and/or saturated insulation. This estimate is considered to be fair, reasonable and applicable to the incident.

        Estimate Amount            $14,335.68

11.  Underwater Services Inc. - Invoice No. 10110B, Divers Services to install temporary patch in bottom of vessel and complete pumping operations. This invoice is considered to be fair, reasonable and applicable to the incident.

        Invoice Amount             $1,175.00

12.  Zimco Marine, Inc. - Order No. 0018713, Shipyard labor and materials to recondition steady bearing found in fish hold. Bearing were submerged and subjected to unusual stress due to debris wrapped around propellor shaft. The invoice is considered to be fair, reasonable and applicable to the incident.

        Invoice Amount             $1,155.27

13.  South Texas Urethane, Inc. - Proposal No. 666, This proposal is to replace insulation in the fish hold. The proposal is an alternate bid to the Mid County Urethane bid of $14,335.68. The amount of this bid is $15,409.22.

14.  Reyes Marine Industries, Inc. - Survey Report No. 434. A copy of Mr. Reyes Report is provided indicating vessel damage and necessary repairs. Some opinions regarding vessel condition are included. No invoice for the survey has been provided. The survey was necessary for vessel repairs.

Case 1:01-cv-00186  Document 34  Filed in TXSD on 02/12/2002  Page 66 of 66

F/V "ENSOLIDO" Invoice Review
Lorna Rosquites
Page-4-

The total of all repair estimates and invoices provided to date is $70,393.13. Some items provided require additional documentation and/or justification. Item No. 1 is considered to be excessive and should be renegotiated with the contractor. Subject to these adjustments the cost of repairs received to date is considered to be fair and reasonable for damage sustained. No opinion regarding the coverage under the vessel's policy of insurance is offered or implied.

This supplemental survey report is made without prejudice to the rights and/or interests of whom it may concern.



Marc A. McAllister
Marine Surveyor

Enclosures: Recap
Various Invoices and Estimates
Reyes Marine Industries, Inc. Survey Report